J-A04011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MONAIRE WALKER, | |
| Appellee | No. 51 EDA 2016 |

Appeal from the Order November 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000860-2015

BEFORE: SHOGAN, SOLANO, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED MARCH 31, 2017**

Appellant, the Commonwealth of Pennsylvania, appeals from the November 25, 2015 order granting the suppression motion filed by Appellee, Monaire Walker.[1] Following our careful review of the record and the law, we reverse.

The trial court summarized the facts as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. **Commonwealth v. Whitlock**, 69 A.3d 635, 636 n.2 (Pa. Super. 2013); Pa.R.A.P. 311(d) (known as **Dugger** certification (**Commonwealth v. Dugger**, 486 A.2d 382 (Pa. 1985)). The Commonwealth included the required certification in its notice of appeal.

The [victim], Ai Jiang, testified that on October 24, 2014, at approximately 9:40 PM, he was making a phone call in front of his house. From behind Mr. Jiang, someone grabbed the phone from out of his hand. Mr. Jiang chased this person for about five to seven blocks. Although it was well-lit, Mr. Jiang only saw the person's back and did not see his face.

Officer [Kevin] McGrorty and his partner were touring the 1900 block of Princeton Avenue in Philadelphia, PA. At approximately 10:00 PM they received a Flash report that a robbery of a cellphone occurred approximately six or seven blocks away at the 7100 block of Castor Avenue. The CAD[2] report indicated that the suspect was a "Black male, wearing all black." At the 1900 block of Princeton Avenue, they saw the Appellee, Monaire Walker, wearing a black hooded sweatshirt and black cut off sweat pants. Officer McGrorty and his partner stopped him "given his close proximity" to the robbery and because "he fit the description of the possible doer." Officer McGrorty also noted that [Appellee] was sweating heavily.

Because Officer McGrorty and his partner were out of uniform and in an unmarked car, they exited their vehicle, presented their badges, and identified themselves as police to [Appellee]. The police ordered [Appellee] to stop for investigation, and he complied. Officer McGrorty asked [Appellee] whether he had any weapons, and he responded that he only had two cellphones. Officer McGrorty proceeded to pat [Appellee] down for weapons, but found none. However, Officer McGrorty found and removed two cell phones from [Appellee's] pocket. One of the phones began to ring, and Officer McGrorty noticed "Asian writing" on the screen of the phone. Officer McGrorty went over the police radio and asked whether the complainant who was robbed was of Asian descent. Officer McGrorty was informed over the radio that the complainant was indeed of Asian descent. Officer McGrorty then asked [Appellee] if he had a gun and whether he had disposed of a gun on the property of a school that was adjacent to their location. According to Officer McGrorty, [Appellee] responded that he

_____

[2] CAD refers to Computer–Aided Dispatch. **Commonwealth v. McGhee**, 52 EDA 2014, 2015 WL 7084116, at *1 (Pa. Super. May 6, 2015) (unpublished memorandum) (not cited for precedential value).

"didn't have a gun" when he "took that phone off the guy." Officer McGrorty and his partner then placed [Appellee] in handcuffs and called for the complainant of the robbery for an ID.

According to Mr. Jiang, police brought him and his daughter to where Officer McGrorty had detained [Appellee]. Once there, and using Mr. Jiang's daughter as a translator, police asked him whether he recognized [Appellee]. Mr. Jiang indicated that he was not sure, because he did not see his assailant's face. However, Mr. Jiang recognized the phone recovered from [Appellee] as being his own. Mr. Jiang also indicated that the clothes worn by [Appellee] matched those that were worn by his assailant. Officer McGrorty similarly testified that Mr. Jiang was able to positively identify [Appellee] as his assailant and the cellphone as his own.

Trial Court Opinion, 2/23/16, at 1–3 (citations to the record omitted).

The trial court summarized the procedural history as follows:

[Appellee] was charged with Robbery (F3), Theft by Unlawful Taking (M2), and Receiving Stolen Property (M1)[3]. On August 18, 2015, [Appellee] moved to suppress, arguing that the cellphone was recovered by police without reasonable suspicion and probable cause, that the identification made by the complainant [w]as unduly suggestive and the fruit of the unlawful stop and arrest, and that [Appellee's] statement was taken without Miranda rights while he was in custody and being interrogated. The motion was heard and held under advisement. On September 9, 2015, this [c]ourt denied [Appellee's] motion on all counts, and scheduled the case for trial. On September 16, 2015, a Motion to Reconsider was filed on behalf of [Appellee]. Upon reconsideration, this [c]ourt reversed itself and held that the police exceeded the scope of a permissible frisk when they removed the cellphones from [Appellee's] pocket, and that the subsequent statement and identification were the fruits

_____

[3] 18 Pa.C.S. § 3701, 18 Pa.C.S. § 3921, and 18 Pa.C.S. § 3925, respectively. We note that while the trial court referenced the theft charge as a second-degree misdemeanor, the information lists the charge as a first-degree misdemeanor. Information, 2/2/15.

of an illegal search. On December 8, 2015, [the Commonwealth] filed a Motion to Reconsider this [c]ourt's decision to grant the motion to suppress, arguing that the cellphone would have inevitably been discovered. [Appellee] filed a Brief in Opposition to the Motion to Reconsider on December 9, 2015. Thereafter, this [c]ourt denied the [Commonwealth's] Motion to Reconsider, holding that absent the illegal seizure of the cell phone, there would have been no identification, incriminating statement, arrest, and search incident to arrest. The [Commonwealth] filed this Interlocutory Appeal to the Superior Court on December 9, 2015.[4]

Trial Court Opinion, 2/23/16, at 3–4. The trial court did not order the filing of a Pa.R.A.P. 1925(b) statement, but the Commonwealth filed one on December 23, 2015, "for the [trial c]ourt's convenience." Pa.R.A.P. 1925(b) statement, 12/23/15.

We dismissed the Commonwealth's appeal on July 14, 2016, due to the Commonwealth's failure to file a brief. The Commonwealth sought reconsideration on July 15, 2016, noting, *inter alia*, that reinstating the appeal would not prejudice Appellee because he was free on bail. We reinstated the appeal on July 27, 2016, and granted the Commonwealth seven days to file a brief, which it did on August 1, 2016.

The Commonwealth raises the following two issues on appeal:

I. Did the lower court err in suppressing evidence based on the seizure of a stolen cellphone from [Appellee] where police had probable cause, and therefore were legally authorized to recover the phone incident to arrest?

---

[4] The notice of appeal was filed December 23, 2015, not December 9, 2015, as asserted by the trial court, but the appeal was timely.

- 4 -

II.    In the alternative, is the lower court's suppression order erroneous where police inevitably would have obtained the suppressed evidence even if they had waited to recover the stolen phone?

Commonwealth's Brief at 3.

Our standard and scope of review is settled:

When the Commonwealth appeals an order suppressing evidence, we may consider on review only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted.  Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions. ***Commonwealth v. Guzman***, 44 A.3d 688, 691-92 (Pa. Super. 2012) (citing ***Commonwealth v. Brown***, 606 Pa. 198, 203, 996 A.2d 473, 476 (2010)).

***Commonwealth v March***, ___ A.3d ___, ___, 2017 PA Super 18, at *2 (Pa. Super. filed January 26, 2017) (citing ***Commonwealth v. Guzman***, 44 A.3d 688, 691–692 (Pa. Super. 2012)).

The Commonwealth first asserts that the stop of Appellee was proper and police were legally authorized to recover the cell phone incident to arrest.[5]  We agree with this conclusion and therefore, need not address the alternative issue of inevitable discovery.

_____

[5]  We reject Appellee's assertion of waiver based upon the Commonwealth's alleged failure to include the issue in its Pa.R.A.P. 1925(b) statement. Appellee's Brief at 11.  Appellee maintains the issue was not preserved for appellate review pursuant to Pa.R.A.P. 1925(b).  We disagree.  While its Rule 1925(b) statement is not the model of clarity, we conclude that the Commonwealth's representation that "**when properly stopped for investigation** and asked if he had any weapons[, Appellee] volunteered

*(Footnote Continued Next Page)*

The Commonwealth maintains that because Officer McGrorty properly stopped Appellee, and the recovery of the cell phone happened only a few minutes before Appellee's formal arrest, the seizure of the phone was permissible under the search-incident-to-arrest doctrine. Commonwealth's Brief at 15 (citing **Rawlings v. Kentucky**, 448 U.S. 98, 111–112 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa")); **Commonwealth v. Ford**, 650 A.2d 433, 439 (Pa. 1994) ("Since probable cause to arrest existed and a formal arrest is not required in order to seize physical (not testimonial) evidence linking a defendant to a crime," suppression of clothes was unwarranted where police had probable cause but the Appellee had not yet been formally arrested when the clothes were seized).

Appellee counters that the officers stopped him based on an impermissibly vague description without reasonable suspicion and searched him without probable cause to do so. Appellee maintains the description

---
*(Footnote Continued)*

that he was carrying two cell phones, consistent with having the victim's stolen phone," was sufficient for meaningful appellate review. Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 12/23/15, at 1 (emphasis added). Reading the entire Rule 1925(b) statement as a whole, we find that the statement sufficiently apprised the court that the Commonwealth's view of the propriety of the stop was at odds with the trial court's conclusion in granting suppression. **See** Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue contained therein . . . .").

police had of him was "overly general." Appellee's Brief at 17. In support he cites to **Commonwealth v. Hicks**, 253 A.2d 276 (Pa. 1969) (defendant did not match description of suspect), and **Commonwealth v. Berrios**, 263 A.2d 342 (Pa. 1970) (overly general description of suspect was insufficient). Appellee's Brief at 19–21. These cases are distinguishable. In **Hicks**, the suspect was described as a "mustached negro in his thirties, of a certain height and weight, wearing a brown coat." **Hicks**, 253 A.2d at 279. Hicks was not wearing a brown coat, did not have a mustache, and there was nothing in the record to indicate that he was of the approximate height and weight of the individual sought. In **Berrios**, police received a flash report that two black men in dark clothing and one of Puerto Rican descent in light clothing were involved in a shooting. **Berrios**, 263 A.2d 344. Twenty minutes later police stopped a black man and a Puerto Rican man who "were merely walking on the street and acting in a normal manner." **Id**. There was nothing about their persons or in their conduct which would indicate that they were armed or dangerous, and their subsequent search was held to be improper. **Id**.

The Commonwealth maintains that the trial court erred by concluding that Officer McGrorty acted impermissibly when he removed the stolen cell phone from Appellee's pocket. The Commonwealth suggests the officer acted with both reasonable suspicion and probable cause. Commonwealth's Brief at 11–12. In support, the Commonwealth suggests the fact pattern

was similar in *Commonwealth v. Brown*, 627 A.2d 1217 (Pa. Super. 1993), where we held:

> Under the circumstances present in the instant case, we do not hesitate to hold that the police had probable cause to believe that appellant had been involved in the attempted burglary at the McDaniel Trucking Company. A police officer came upon the scene of a burglary in progress and observed a suspect who was then attempting to gain entry to the trucking company building. Upon seeing the officer, the suspect fled. A short time later, the same suspect was apprehended, along with appellant, by a second officer only a short distance from the scene of the crime. Both men were sweating and out of breath, as if they had been running, and neither was wearing a coat despite the fact that it was a cold winter night. All of this activity occurred after 2:00 a.m. Thus, although police did not initially know that a second man had been involved in the crime, appellant's presence with the suspect, a short distance from the scene of the crime, after 2:00 a.m., where both men appeared to have been running, was sufficient to permit a trained police officer to conclude reasonably that appellant probably had been involved in the crime. Because appellant's arrest was supported by probable cause, his subsequent inculpatory statement was properly received in evidence during his trial.

*Id*. at 1219; Commonwealth's Brief at 13.

Pennsylvania jurisprudence recognizes three categories of interaction between citizens and police officers:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Gutierrez***, 36 A.3d 1104, 1107 (Pa. Super. 2012)

(quoting ***Commonwealth v. Ellis***, 662 A.2d 1043, 1047 (Pa. 1995)

(citations omitted)).

The following factors impact an officer's reasonable suspicion that an

individual is engaging in criminal conduct:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. ***Commonwealth v. Cook***, 558 Pa. 50, 735 A.2d 673, 676 (1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." ***Id.*** In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. ***In re D.M.***, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience." ***Cook***, 735 A.2d at 676 (quoting ***Terry v. Ohio***, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." ***Cook***, 735 A.2d at 676.

***Commonwealth v. Freeman***, 150 A.3d 32, 36–37 (Pa. Super. 2016)

(quoting ***Commonwealth v. Rogers***, 849 A.2d 1185, 1189 (Pa. 2004)).

We examine the instant facts. Officer McGrorty and his partner,

Officer Feeney,[6] were on patrol when they received a flash call for a robbery

at gunpoint in their vicinity. N.T., 8/18/15, at 14. The CAD report indicated

that the call stated, "Male chasing male who robbed him, down Princeton

---

[6] The record does not reveal Officer Feeney's first name.

toward Bustleton, black male, wearing all black, point of gun." *Id*. at 27. Officer McGrorty testified on both direct and cross-examination that he knew the robbery was of a cell phone. *Id*. at 19, 30. Within three to five minutes of receiving the call, the officers observed Appellee, who matched the robbery suspect's description, coming out of an alley in the exact direction the suspect had been running minutes earlier and that was five or six city blocks away from the location of the robbery. *Id*. at 15, 17. Appellee was sweating heavily and out of breath on a late-October night. *Id*. at 14, 17. The officers, who were in plain clothes, presented themselves as police officers with their badges around their necks and "advised [Appellee] to stop for investigation," and Appellee complied. *Id*. at 18. Officer McGrorty asked Appellee if he had any weapons, and he responded, "[N]o, just two cell phones in my pocket." *Id*. at 19–20. Officer McGrorty conducted a pat-down and removed two cell phones, one that was ringing and displaying "Asian letters or Asian writing all throughout the screen on the phone." *Id*. at 18. The officer then "went over police radio and asked if the complainant who was robbed was of Asian de[s]cent, which we found out he was." *Id*. at 20. Appellee was handcuffed. *Id*. at 21. Police officers who were at the scene of the robbery transported the victim, who spoke little English, to Appellee's location along with the victim's daughter, who translated for her father, within five minutes of the initial stop. *Id*. at 21, 23, 30.

The victim testified that after someone grabbed his cell phone from behind and ran the other way, the victim chased him for five to seven blocks and then lost sight of him. N.T., 8/18/15, at 34. When he was brought to Appellee's location, police asked the victim if he recognized Appellee. The victim stated that he had not seen Appellee's face when he chased him, only "that person's back." *Id*. The victim's statement to police indicated that he described Appellee as "much taller than me" and that he "looked very strong. I think he was about 25 to 30 years old." *Id*. at 39. When asked about Appellee's clothing, the victim stated, "[T]hat's how I recognize [him,] the person who grabbed my phone was wearing the same." *Id*. at 36. In his statement to police, the victim indicated, "[T]he clothes are definitely the same." *Id*. at 44. The victim also testified that when he saw the cell phone, he said, "[T]his is my phone, I recognized the phone." *Id*. at 35. At the suppression hearing, Appellee's counsel suggested to the victim on re-cross that the "fact that [Appellee] was arrested and had your phone made you more sure of the identification," to which the victim responded:

> So first I saw [Appellee], I identified the person [Appellee] because of his clothing and because of his height, he is taller than me. And then after that I did say that I didn't see his [face] but I can recognize his clothing and his height and he is a black guy.

*Id*. at 45.

Officer McGrorty revisited the issue of a possible weapon with Appellee at the scene because the radio call had indicated the robbery was at gun

point, and they were near school property. N.T., 8/18/15, at 20, 24, 32. The officer was concerned that a child could "get[] ahold of that gun." *Id*. at 20. Officer McGrorty stated that Appellee blurted out, "I didn't have a gun when I did it. And I said, did what? And he said, when I took that phone off the guy." *Id*. at 18, 20, 32.

Reviewing the circumstances in their totality, we conclude that Officer McGrorty's detention of Appellee was supported by reasonable suspicion that ripened to probable cause, and thus, suppression by the trial court was improper. We remind Appellee that we "cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor in terms of library analysis, but as understood by those versed in the field of law enforcement." *Commonwealth v. Jackson*, 907 A.2d 540, 543 (Pa. Super. 2006) (quoting *Commonwealth v. Shelly*, 703 A.2d 499, 503 (Pa. Super. 1997)). The totality of these facts, in the knowledge of Officer McGrorty at the time, was sufficient to establish reasonable suspicion of criminal activity necessary to detain Appellee, and ultimately, provide probable cause to arrest him. We conclude that the detention was lawful, and the trial court improperly held that the evidence garnered as a result thereof should be suppressed. Thus, we remand this case to the common pleas court for trial.

Order reversed; case remanded; jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/31/2017</u>