735 A.2d 673

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Gregory Spencer COOK, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 1998.

Decided July 23, 1999.

52

Paul W. Muller, Sr. Deputy Public Defender, for Gregory S. Cook.

John F. Cherry, District Attorney, Eric R. Augustine, Deputy District Attorney, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

The sole issue presented in this appeal is whether the police officers demonstrated the requisite cause to stop appellant and recover the contraband discarded by him pursuant to Article 1, Section 8 of the Pennsylvania Constitution. For the reasons which follow, we agree with the lower courts and hold that the police officers demonstrated reasonable suspicion sufficient to permit a stop and thus, could lawfully recover the contraband abandoned by appellant.

 As the issue before us stems from the ruling of the suppression court our standard of review is limited. When reviewing rulings of a suppression court, we must determine whether the record supports that court's factual findings. *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985). As long as the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.*

The facts, as determined at the suppression hearing, established the following. On August 4, 1995, Officers Christopher Juba and Donald Heffner of the Harrisburg Police Bureau were patrolling the 1300 block of Market Street in the City of Harrisburg between 8 p.m. and 1 a.m.[1] The officers testified that while travelling east on Market, in an unmarked car, they

---

**1.** Officer Juba testified that the incident occurred "in the evening hours, sometime after 8:00," on the other hand Officer Heffner testified that "it was about 20 minutes to 1:00." N.T. 23, 24.

noticed three individuals on the corner. The individuals were engaged in conversation. The officers passed the group at a very slow rate, and they observed appellant take his left hand out of his front pocket in a fist position and reach toward one of the other individuals. The individual reached out toward appellant and attempted to receive the unidentified item from his hand. To further investigate this conduct, Officer Heffner made a U-turn and drove to the corner where the group was gathered. As soon as appellant spotted the officers and the car, he placed his hand back in his pocket and began backing away from the group. Officer Juba exited the car, identified himself as a Harrisburg police officer, and began walking toward the group. Appellant immediately began to run "in almost a dead sprint." Officer Juba chased the appellant, with Officer Heffner following in the vehicle.

During the course of the chase, Officer Juba witnessed appellant throw two pagers to the ground; Officer Heffner saw appellant pull a sandwich bag from his pocket and throw it into the yard of an abandoned house. Ultimately, Officer Heffner apprehended appellant and recovered the sandwich bag. The bag was discovered to contain eighteen large rocks of crack cocaine and $45 in cash.

Appellant moved to suppress the evidence that was abandoned during the chase, by arguing that the evidence was obtained as a result of an illegal seizure. The suppression court denied appellant's motion and the Superior Court affirmed in a memorandum opinion. This court granted appellant's petition for allowance of appeal in order to determine whether the police officers demonstrated reasonable suspicion to stop appellant.

Appellant contends that pursuant to the facts in the instant case, the police officers did not have reasonable suspicion to stop him; therefore, the contraband that was recovered must be suppressed as the result of an unlawful seizure. Appellant relies on *Commonwealth v. Tither*, 448 Pa.Super. 436, 671 A.2d 1156 (1996) and *Commonwealth v. Malson*, 434 Pa.Super. 155, 642 A.2d 520 (1994) for his position. On the other hand, the Commonwealth contends that the officers possessed rea-

sonable suspicion; therefore, the lower courts properly denied suppression.

Both the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571, 573 (1997). In *Commonwealth* v. *Matos*, 543 Pa. 449, 672 A.2d 769 (1996), this court established that the reasonableness requirement was met where police, at the very least, demonstrated reasonable suspicion to recover contraband abandoned by a person fleeing the police. *Matos* involved three separate cases, which were consolidated for appeal: *Matos, Commonwealth v. McFadden* and *Commonwealth v. Carroll. Id.* at 770. In *Matos,* the facts established that two Philadelphia police officers responded to a radio broadcast that unknown persons were selling narcotics in the vicinity of Reese Street. *Id.* at 771. As the police approached a group of three men in a nearby playground, the men fled. The police pursued the men and one of the officers observed Matos discarding a plastic bag of cocaine as he was being chased. The police recovered the bag. *Id.* In *McFadden,* two uniformed police officers in a marked vehicle approached McFadden. McFadden looked at them and promptly ran away. One of the officers chased him a short distance. *Id.* During the chase, the officer saw McFadden toss a handgun into the bushes. The officer recovered the handgun, and arrested McFadden for carrying an unlicensed firearm. *Id.* Lastly, in *Carroll,* two uniformed police officers in a marked vehicle saw two men standing on the sidewalk. *Id.* The officers exited the patrol car and spoke to one of the two men. As the police were talking to the first man, Carroll stood with his hands in his jacket pockets. One of the officers approached Carroll and asked him to remove his hands from his pocket, at which point Carroll turned and fled. As Carroll was running, he slipped and fell. One of the officers saw two broken tinted heat sealed packets containing white substance fall from Carroll's pocket. Carroll was arrested and the packets were recovered. *Id.* In all three cases, the trial court suppressed the evidence,

but the Superior Court reversed. This court reversed the Superior Court and remanded to the respective trial courts for further disposition. *Id.* at 776.

In announcing its decision, this court rejected the United States Supreme Court's decision in *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991),[2] and determined that due to heightened privacy considerations in Pennsylvania, a police officer's pursuit of a person fleeing the officer was a seizure for purposes of Article 1, Section 8 of the Pennsylvania Constitution. *Id.* at 776. Thus, pursuant to *Matos,* any contraband discarded during the pursuit was abandoned by coercion and "the officer must demonstrate either probable cause to make the seizure or reasonable suspicion to stop and frisk." *Matos,* 672 A.2d at 771. Where the police officers do not possess either probable cause or reasonable suspicion, then the contraband is illegally obtained and must be suppressed. *Id.* The court held that based on the facts and circumstances surrounding each of the individual cases, the police were unable to demonstrate either probable cause or reasonable suspicion. *Id.* at 776. Therefore, based on *Matos,* the inquiry in the instant case is whether the police officers demonstrated reasonable suspicion at the time they recovered the contraband abandoned by appellant.[3]

In the seminal case on reasonable suspicion, the United States Supreme Court recognized that circumstances may exist which require a police officer on the "beat" who has made on the spot observations to take immediate action or investigate further by stopping and perhaps frisking the individual involved. *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* a police officer with 30 years experience in patrolling the vicinity for shoplifters and pickpockets, observed Terry and another man taking turns pacing

**2.** In *Hodari D.,* the Court rejected the notion that police officers need either reasonable suspicion or probable cause to recover contraband abandoned by a person fleeing the police; thus, the holding in *Hodari D.* precludes any issue arising under the Fourth Amendment in the instant case.

**3.** In the instant case, both parties concede that the officers did not possess probable cause.

down the street and peering into a nearby store window and then walking back to the corner and rejoining his companion. *Id.* at 6, 88 S.Ct. 1868. At one point, the officer observed a third man approach the two men, engage in conversation, and then walk on. *Id.* Following this, Terry and his companion resumed their pacing. *Id.* The two individuals repeated this process five or six times each. After this had gone on for ten to twelve minutes, the two men walked away in the same direction taken by the third man. *Id.* By this time, the officer suspected that the two men were "casing a job, a stick up." *Id.* Therefore, he decided to investigate further and followed the men. He saw the men stop on the sidewalk and meet up with the third man. *Id.* At this point he determined that the situation was ripe for action, so he approached the group and asked them for their names. *Id.* at 7, 88 S.Ct. 1868. When the men only mumbled in response to his question, the officer grabbed Terry, spun him around and with Terry between himself and the other two men, he patted down the outside of Terry's clothing. *Id.* The officer felt a pistol in Terry's coat pocket. *Id.* Unable to get a grip on the gun, the officer ordered all three men into a nearby store, where he proceeded to pat down the other two men. *Id.* The officer found a gun on one of the other men. *Id.* Ultimately, the two men were arrested and formally charged with carrying concealed weapons. *Id.*

The Supreme Court held that the pistol seized from Terry at the time of the stop was properly admitted into evidence. *Id.* at 30, 88 S.Ct. 1868. Although the court stressed that the police must, whenever practicable, obtain a search warrant, the decision in *Terry* was based, in part, on the "recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22, 88 S.Ct. 1868. "It was this legitimate investigative function [the officer] was discharging when he decided to approach [Terry] and his companions." *Id.* In light of this recognition, the Court created a test, which balanced the need to search against the

invasion which the search entails. *Id.* at 21, 88 S.Ct. 1868. In order to justify the search, the police officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 22, 88 S.Ct. 1868. Even a combination of innocent facts, when taken together, may warrant further investigation by the police officer. *Id.* Moreover, "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences he is entitled to draw from the facts in light of his experience." *Id.* at 27, 88 S.Ct. 1868. This standard, less stringent than probable cause, is commonly known as reasonable suspicion.

Shortly following the Court's opinion in *Terry,* this court embraced the reasonable suspicion exception to the warrant requirement in *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). Since *Hicks,* Pennsylvania courts have consistently followed *Terry* in stop and frisk cases, including those arising under Article 1, § 8 of the Pennsylvania Constitution. *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 573 (1997); *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 230 (1996)(*Terry* sets forth the standard for the reasonableness of a search under Art. 1, § 8).

Following the dictates of *Terry,* Pennsylvania courts recognize that under limited circumstances police are justified in investigating a situation, so long as the police officers reasonably believe that criminal activity is afoot. *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 228 (1996); *see also Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992)(rejecting any expansion of the *Terry* exception to probable cause). In order to demonstrate reasonable suspicion, the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience. *Jackson,* 698 A.2d at 573 (*citing Terry,* 392 U.S. at 27, 88 S.Ct. 1868). Case law has established that certain facts, taken alone, do not establish reasonable suspicion. *Commonwealth v. Matos,* 543 Pa. 449,

672 A.2d 769 (1996)(flight alone does not constitute reasonable suspicion); *Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030 (1992)(flight alone does not constitute reasonable suspicion); *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346 (1992)(mere presence in a high crime area does not warrant a stop). However, a combination of these facts may establish reasonable suspicion. *Terry v. Ohio*, 392 U.S. at 22, 88 S.Ct. 1868 (innocent facts, when taken together, may warrant further investigation); *Commonwealth v. Riley*, 715 A.2d 1131, 1135 (Pa.Super.1998)("a combination of circumstances, none of which alone would justify a stop, may be sufficient to achieve a reasonable suspicion").

The instant case presents a similar situation to the one in *Terry*. Both police officers involved in the stop were assigned to the street level drug interdiction unit, and had worked in that unit for over two years. One of the officers testified that he had made prior drug arrests in the same area where the instant incident occurred. Moreover, in *Terry* the officer made firsthand observations of completely innocent conduct—pacing up and down the street and peering into a store window—which aroused his suspicions. Similarly, in the instant case, the officers directly observed conduct—the attempted hand-off of an unidentified object—which immediately aroused their suspicions. Thus, similar to the officer in *Terry* who believed that Terry and his companions were casing a joint based on his experience observing shoplifters and pickpockets, these officers believed they were witnessing a drug transaction based on their experience in narcotics investigation.

Similar to the situation that existed in *Terry*, it is beyond peradventure that it was part of the legitimate investigative function of police work for the officers in the instant case to investigate the situation further. This belief prompted them to make a U-turn and approach the group on the corner, at which point appellant withdrew his hand from the other individual and began to back away. When the police officers went to investigate, appellant fled. Thus, based on the facts surrounding the instant case, including the police officers'

training, expertise and past drug arrests in the same area; the attempted exchange of an unidentified object in a high crime area,[4] appellant's nervous behavior when the police made a U-turn; and appellant's flight, the police officers were able to point to specific and articulable facts, which in light of their police training and expertise, supported a finding of reasonable suspicion.[5]

Although on its face the instant case appears analogous to the situation in *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995), *Banks* is clearly distinguishable, because *Banks* involved probable cause. In *Banks*, this court held that mere police observation of the exchange of unidentified objects coupled with flight does not establish probable cause. However, the court continued on to state that "such facts, even when considered together, fall **narrowly** short of establishing probable cause." *Id.* at 753 (emphasis added). In the instant case, the requisite cause was the lower standard of reasonable suspicion, not probable cause. Accordingly, it is logical to conclude that since the facts in *Banks* fell only "narrowly" short of probable cause, similar facts, like those present in the instant case, demonstrate reasonable suspicion.

Moreover, the instant case is distinguishable from *Matos*. In *Matos*, the police officers had only vague descriptions regarding the identity of the persons and location.[6] In addition, in both *McFadden* and *Carroll*, the companion cases of *Matos*, the police officers approached the appellants for no apparent reason. Accordingly, in all three factual scenarios involved in the *Matos* decision, the police had no reason, other than the appellants' flight, to suspect that criminal activity was

4. Officer Juba testified that he had received prior complaints and had made numerous drug related arrests in that specific section of the city.

5. The suppression court also relied on the time of the transaction in determining that the police demonstrated reasonable suspicion. However, the facts only establish that the transaction occurred some time between 8 p.m. and 1 a.m.; thus due to the ambiguity of the time frame established by the testimony, this court is not persuaded that the "time" of the observations should be used in determining reasonable suspicion.

6. In *Matos*, the appellants were described as "unknown persons" with no accompanying physical description; and the location was given as "in the vicinity of Reese Street."

afoot. All three of the factual situations of *Matos* are clearly distinct from the instant case where the police made firsthand observations of suspicious conduct before approaching appellant. It was only once they had already made the decision to investigate further, when their suspicions were already aroused, that appellant fled. Thus, as discussed more fully above, there were specific factors, including flight, to support a finding of reasonable suspicion.

Lastly, appellant's reliance on *Commonwealth v. Tither*, 448 Pa.Super. 436, 671 A.2d 1156 (1996) and *Commonwealth v. Malson*, 434 Pa.Super. 155, 642 A.2d 520 (1994) is misplaced.[7] In *Tither*, the officer was walking in a high crime area, when someone yelled "5–0, 5–0"—a warning that there was a police officer in the area. *Tither*, 671 A.2d at 1158. Immediately following the warning, appellant began to drive away and the man who was leaning in appellant's car window turned around and walked into his apartment. The officer stopped the car and detained appellant. The Superior Court held that there was no reasonable suspicion and suppressed the contraband. Appellant relies on *Tither* for the proposition that there is no reasonable suspicion in the instant case. However, *Tither* presents a situation similar to *Matos,* where the police had no reason, other than the appellant's driving away in response to the yelling of "5–0, 5–0," to suspect that criminal activity was afoot. In addition, in *Tither* the court stressed that the officer did not "even observe an exchange between appellant and the man leaning into her window," clearly inapposite to the instant situation where the officers observed a transaction. *Id.* at 1158. Similar to *Tither, Malson* involved fewer facts than are present in the instant case. *Malson,* 642 A.2d at 523. In *Malson,* the only fact to establish the requisite cause was the police observation of a transaction involving an unidentified object. However, more importantly to the case at hand, in *Malson* the court was considering whether the police demon-

7. We would also note that this court is not bound by rulings of a lower court in this Commonwealth. *Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811, 823 (1994).

strated probable cause to arrest and not the lesser standard of reasonable suspicion that is involved in the instant case.

For the reasons stated herein, we conclude that based upon a combination of facts and circumstances, in the instant case, a reasonable police officer could conclude that criminal activity was afoot. Accordingly, the lower courts correctly denied the motion to suppress the contraband and we affirm the order of the Superior Court.

Justice SAYLOR files a Concurring Opinion.

Chief Justice FLAHERTY and Justice CASTILLE concur in the result.

Justice ZAPPALA files a Dissenting Opinion.

SAYLOR, Justice, concurring.

I agree with the majority that the contraband abandoned by Appellant during his flight from police was properly recovered and admitted into evidence at trial. I write only to note my agreement with the logic of the United States Supreme Court's decision in *California v. Hodari D.,* 499 U.S. 621, 625–26, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991)(holding that a seizure did not occur until the police physically restrained a fleeing suspect), and of Mr. Justice Castille's dissenting opinion in *Commonwealth v. Matos,* 543 Pa. 449, 473, 672 A.2d 769, 781 (1996)(Castille, J., dissenting)(stating that "[t]hat a person voluntarily chooses to flee from the 'mere presence' of a police officer should not immunize that person when he abandons contraband, weapons, or other evidence during the course of his flight and a police officer's pursuit"). Thus, I believe that, in the absence of unlawful conduct on the part of the police, and even under the paradigm of a mere encounter, abandoned property, as such, should be subject to lawful recovery by the authorities.

ZAPPALA, Justice, dissenting.

Because I can discern no meaningful distinction between the facts of this case and those of *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996), I respectfully dissent.

In accordance with the protections afforded our citizens under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, there are only two situations where police may "seize" an individual. Both require a showing of antecedent justification: first, an arrest based upon probable cause, *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987); second, an investigatory detention based upon reasonable suspicion, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *accord Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). An investigatory detention is justified only if the "police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . ." *Terry,* 392 U.S. at 30, 88 S.Ct. 1868.

*Matos* involved three consolidated appeals. As aptly summarized by the majority, "in all three factual scenarios involved in the *Matos* decision, the police had no reason, other than the appellants' flight, to suspect that criminal activity was afoot." (Majority Op. at 678).[1] This Court concluded that under such circumstances, the officers possessed neither probable cause nor reasonable suspicion to justify a seizure. Accordingly, we held that the contraband discarded by the *Matos* appellants as they were fleeing from police officers had to be suppressed as the "fruit" of an illegal seizure.

The Majority attempts to distinguish *Matos* from the instant case based on the existence of an additional factor not present in *Matos;* that is, that "the police made firsthand observations of suspicious conduct before approaching [Appellant]." (Majority Op. at 678). However, this supposedly "suspicious conduct" was in reality nothing more than a speculation that an unidentified item was being exchanged in a high crime area. As summarized by the trial court:

1. In the lead case of *Commonwealth v. Danny Matos,* the police officers encountered the appellant while responding to a "radio broadcast that unknown persons were selling narcotics in the vicinity of Reese Street," whereas in the companion cases of *Commonwealth v. Andrew McFadden* and *Commonwealth v. Richard Carroll,* the police encountered the appellants while on routine patrol. *Matos,* 672 A.2d at 770–771.

The officers testified that while traveling east on Market Street, in an unmarked gray Ford Thunderbird, they noticed three individuals standing on the northwest corner of Fourteenth and Market Streets,[fn2] engaged in conversation. (N.T. 16). Further testimony established that as the officers proceeded past the gathering at a "very, very slow rate," they observed [Appellant] take his left hand out of his front pocket in a fist position and reach toward one of the other individuals present on the corner. (N.T. 16–17). Acknowledging this gesture, that individual reached out to [Appellant] and attempted to receive the item from his hand.[fn3] To further investigate this conduct, Officer Heffner, the driver of the vehicle, made a U-turn at the intersection and drove up to the area where the individuals were congregating. (N.T. 43). The instant [Appellant] spotted the vehicle and the officers, he brought his hand abruptly back into his pocket and started to back away from the group. (N.T. 19). Responding to this suspicious action, Officer Juba exited the vehicle and identified himself as a Harrisburg Police Officer. (N.T. 19). As the officer approached, [Appellant] immediately began running in "almost a dead sprint." (N.T. 39).

---

[fn2] At the hearing, Officer Juba affirmed that "14th and Market is a high drug trafficking area." (N.T. 17). In addition, he noted that there had been prior drug complaints and arrests on the specific corner at issue. (N.T. 17).

[fn3] Neither Officer identified the item in Mr. Cook's hand. (N.T. 25, 32).

(Trial Ct. Op. at 1–3). Thus, the officers did not observe what, if anything, was in Appellant's hand as it was outstretched toward another individual present on the corner of Market and 14th Streets, nor did they observe an exchange of any kind actually take place.

Based on my reading of the facts of this case, it was unreasonable for Officers Juba and Heffner to attempt to subject Appellant to an investigatory detention. The possible attempted exchange of an unidentified object in a "high crime area," coupled with Appellant's nervous behavior and flight in response to the appearance of uniformed police officers, pro-

vides no reasonable basis for the officers to believe that Appellant might have been engaged in the illegal sale of narcotics. These factors, whether considered separately or in the aggregate, do not establish reasonable suspicion of criminal conduct. Officers Juba and Heffner approached Appellant merely on the basis of an unsupported hunch that Appellant was involved in narcotics trafficking.

As the police officers possessed insufficient antecedent justification to lawfully subject Appellant to an investigatory detention, Appellant's flight and abandonment of contraband during the officers' subsequent pursuit must be interpreted as a coerced abandonment pursuant to this Court's decision in *Matos.* Appellant's suppression motion should have therefore been granted. Accordingly, I dissent and would reverse the order of the Superior Court.