J-S84004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HAKIM MOORE, | |
| Appellant | No. 2242 EDA 2017 |

Appeal from the Judgment of Sentence Entered June 19, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010177-2016

BEFORE:  BENDER, P.J.E., OTT, J., and FORD ELLIOT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 20, 2019**

Appellant, Hakim Moore, appeals from the judgment of sentence of an aggregate term of 9½-19 years' incarceration, imposed after he was convicted of several firearm offenses.  Appellant solely challenges the trial court's order denying suppression of the seized firearm.  After careful review, we affirm.

The trial court summarized the facts established at the suppression hearing as follows:

> Before trial, Appellant brought a motion to suppress physical evidence—namely, a firearm which police recovered from his person in the area of 1600 West Susquehanna Avenue, in the city and county of Philadelphia, Pennsylvania.  The sole witness at the suppression hearing was Philadelphia Police Officer, Daniel Loesch, who has been a police officer for nine (9) years and had worked in the 22nd District for five (5) years.  1600 West Susquehanna Avenue is located in the 22nd District.  []N.T., 4/17/17, [at] 4-5, 18-19[].

At around 9:20 p.m. on October 13, 2016, Officer Loesch and his partner, Officer David Rausch, were patrolling the area of 1600 West Susquehanna Avenue in plain clothes and an unmarked patrol car. Officer Rausch was the driver while Officer Loesch was the recorder. Although the patrol car was unmarked, it had dark tinted windows, a spotlight on the driver's side, police lights in the grille of the vehicle, and police lights in the windshield area towards the top. The vehicle's spotlight and grille lights were not turned on, but they would have been visible to bystanders outside the vehicle. []*Id.* at … 4-5, 9-11, 26[].

Officer Loesch first observed Appellant standing outside a deli located on the corner of the 1600 block of West Susquehanna Avenue, approximately thirty (30) to forty (40) feet away from the officers' patrol car. The store is located at a busy intersection and other people were in the area, but nobody was standing with Appellant. Officer Loesch testified that he has made prior arrests near 1600 West Susquehanna Avenue, and has been present in that area when fellow officers recovered firearms from individuals. He testified that there had been "numerous [prior] shootings in that area," including a recent shooting only "a half of a block away." Officer Loesch receives yearly firearms training, during which he is "taught different tactics on how firearms are concealed [and] different ways they're carried." Officer Loesch also is a member of the Narcotics Enforcement Team (NET), and he testified that 1600 West Susquehanna Avenue is "one of the areas that [NET] receives the most complaints about." []*Id.* at … 4-5, 8, 18-21[].

As the officers drew closer in their patrol car, Appellant looked in their direction and grabbed towards his waistband area, "like in his middle right where your navel or belly button is at." Officer Loesch believed Appellant was armed with a gun because of "[t]he way he grabbed towards the waistband area, almost blading himself away from us and immediately turn[ing] his back and enter[ing] the store quickly." As Appellant entered the store, "he was adjusting" his waistband again. On approximately 20 or 30 prior occasions, Officer Loesch had recovered firearms from people who made similar movements towards their waistbands as Appellant. []*Id.* at … 6-9, 18[]. Officer Loesch further explained that he has participated in "[p]robably over 50" arrests involving firearms, and in about one-half (½) of those arrests, the suspect had made the same "movement" as Appellant. []*Id.* at … 21-23[].

After Officer Rausch parked the patrol car, Officer Loesch exited his patrol car and started walking towards the door of the deli. Officer Loesch was wearing his police vest and police badge. []*Id.* at … 11-13[]. He observed Appellant coming from the rear of the store out of one of the aisles approaching the line for the cashier, where he then stood in line as if he was paying for something. Then, without having anything in his hand to purchase, or interact[ing] with the cashier or anyone else inside the store, Appellant started to walk back out of the deli. When Appellant reached the store's doorway, Officer Loesch "made a decision to stop [Appellant] for an investigation and ... escorted him out to the side of the door so ... he wouldn't impede any pedestrian traffic going in and out of the store." []*Id.* at … 12-14[].

Once outside the store, Officer Loesch "asked [Appellant] to put his hands up" because he believed Appellant had a weapon and feared for his own safety. Officer Loesch wanted Appellant's hands to be "a further distance" from where "the waistband would be[.]" When Appellant raised his hands to about ear-level, "his sweatshirt went up enough where you could see the grips of the handgun in the waistband area ... just underneath his belly button." Officer Loesch asked Appellant whether he possessed a license for the gun, and Appellant replied "no." Officer Loesch therefore recovered the gun and placed it on property receipt, and then placed Appellant under arrest. []*Id.* at … 16-18, 21-22[].

Trial Court Opinion (TCO), 1/19/18, at 2-4.

The Commonwealth charged Appellant with violations of 18 Pa.C.S. §§ 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms) (count 1), 6106 (firearms not to be carried without a license) (count 2), and 6108 (carrying firearms on public streets or public property in Philadelphia) (count 3). On November 16, 2016, Appellant filed a motion to suppress the seized firearm, arguing, *inter alia*, that he had been "subjected to a stop and frisk on less than reasonsable suspicion." Appellant's Motion to Suppress, 11/16/16, at 1 (titled "Omnibus Motion"). A suppression hearing

was held on April 17, 2017, and the trial court denied the motion on April 18, 2017. Subsequently,

> Appellant proceeded by way of a stipulated waiver trial. The Commonwealth moved to incorporate all non-hearsay testimony from the … suppress[ion hearing], and then moved in the firearm recovered from [A]ppellant, the certificate of non-licensure, the ballistician report, and [A]ppellant's court summary, deeming him ineligible to possess a firearm. The Commonwealth and then the defense rested. The lower court convicted Appellant of all charges, and deferred sentencing pending the preparation of a [pre-]sentence report.

Appellant's Brief at 4. On June 18, 2017, the trial court sentenced Appellant to consecutive terms of 5-10, 3½-7, and 1-2 years' incarceration at counts 1, 2, and 3, respectively, for an aggregate sentence of 9½-19 years' incarceration.

Appellant filed a timely notice of appeal on July 12, 2017, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on August 25, 2017. The trial court issued its Rule 1925(a) opinion on January 19, 2018.

Appellant now presents the following question for our review:

> Did not the lower court err in failing to grant the motion to suppress the evidence seized from [A]ppellant where a plain clothes police officer in an unmarked car on routine patrol lacked reasonable suspicion to stop [A]ppellant who was simply standing in front of a corner store and did nothing more than adjust the waistband of his pants before entering the store?

*Id.* at 3.

We review a claim that a trial court erred in denying a motion to suppress under the following standard:

> We determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them

- 4 -

are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Walker*, 836 A.2d 978, 980 (Pa. Super. 2003) (quoting

*Commonwealth v. DeJesus*, 787 A.2d 394, 401 (Pa. 2001)).

Both parties and the trial court agree that the applicable constitutional

standard for stopping and searching Appellant for a weapon in this case was

'reasonable suspicion.'

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. *Commonwealth v. Cook*, … 735 A.2d 673, 676 ([Pa.] 1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." *Id.* In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. *In re D.M.*, 781 A.2d 1161, 1163 ([Pa.] 2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Cook*, 735 A.2d at 676 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 … (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Cook*, 735 A.2d at 676.

*Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004).[1]

---

[1] The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution are coextensive with respect to this standard. *See Commonwealth v. Stevenson*, 832 A.2d 1123, 1127 (Pa.

Instantly, Appellant argues that Officer Loesch did not possess reasonable suspicion to believe Appellant was engaged in criminal conduct—specifically, the illegal possession of a firearm. He argues:

> When initially observed by police, … [A]ppellant[] was standing in front of a store opened for business. At some point, he grabbed at his waistband, turned to walk into the store, and adjusted his waistband again. These actions were neither suspicious nor illegal. Police Officer Loesch decided, solely on the basis of these innocuous actions, that [A]ppellant had a firearm….

Appellant's Brief at 8. Essentially, Appellant asserts that Officer Loesch acted based on a hunch, not reasonable suspicion. "While the term 'reasonable suspicion' is undoubtedly open to some degree of interpretation, it would seem clear that it was meant to convey a level of suspicion that goes beyond an 'educated hunch.'" *Commonwealth v. Donaldson*, 786 A.2d 279, 281 (Pa. Super. 2001).

The trial court concluded instead that, considering the totality of the circumstances, Officer Loesch conducted a *Terry* stop based on reasonable suspicion, not a mere hunch:

> All of these factors in their totality—namely that Appellant grabbed his waistband and bladed his body away upon seeing the police car; that he immediately entered the store and again grabbed at his waistband; that once inside the store he acted as if he was making a purchase but then left; that Officer Loesch is highly

---

Super. 2003) ("The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the Federal Constitution. However, [i]n determining whether reasonable suspicion exists for a *Terry* stop, the inquiry is the same under either Article 1, Section 8 of the Pennsylvania Constitution or the Fourth Amendment of the United States Constitution.") (internal citations, footnote, and quotation marks omitted).

- 6 -

trained and experienced in recognizing Appellant's movements as those exhibited by individuals secreting guns; that he has in fact recovered guns from individuals making the same movements 20-30 times; that 16th & Susquehana is known as a high crime area specifically for shootings—all of these factors combined gave Officer Loesch reasonable suspicion that Appellant was armed.

TCO at 8-9.

We agree with the trial court. Although Appellant correctly argues that many of his actions were not suspicious when considered in isolation, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Cook**, 735 A.2d at 676; **see also Illinois v. Wardlow**, 528 U.S. 119, 125 (2000) ("Even in **Terry**, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation."). Moreover,

> **Terry** accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The **Terry** stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further.

**Wardlow**, 528 U.S. at 126.

Here, further investigation was warranted by Officer Loesch given that Appellant engaged in evasive behavior in response to the arrival of police[2] in

---

[2] Evasive behavior is a relevant factor under the reasonable suspicion standard. **See Commonwealth v. Foglia**, 979 A.2d 357, 361 (Pa. Super. 2009).

- 7 -

a high-gun-crime area,[3] where such behavior was consistent with the officer's experience during prior encounters with armed individuals.[4] Appellant counters that, unlike in *Foglia*, he was not "obviously aware of the police presence." Appellant's Brief at 13. We disagree. Whether Appellant was aware of the police presence in this case is a factual question, and under our standard of review, "we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted…." *Walker*, 836 A.2d at 980. Here, Appellant did not present any evidence at the suppression hearing supporting his assertion that he was unaware of the police presence. However, the Commonwealth presented at least some evidence through the testimony of Officer Loesch that supports the inference that Appellant was reacting to the arrival of police. The trial court found that evidence credible, and our standard of review demands that we honor the

---

[3] It is well-established that while presence in a high crime area is not by itself sufficient to support a *Terry* stop, it is a relevant factor to consider under the reasonable suspicion standard. *See Wardlow*, 528 U.S. at 124 ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis.") (internal citation omitted).

[4] "[I]f a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred." *Foglia*, 979 A.2d at 361.

court's factual determination in that regard. **See *In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) ("When we state that part of our 'task' is to determine whether the record supports the suppression court's factual findings, this is another way of expressing that our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations. In other words, if the record supports the suppression court's findings, we may not substitute our own findings."). Accordingly, we conclude that Appellant's claim lacks merit.

Judgment of sentence ***affirmed***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/19