J-S35042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENT THOMAS | : | |
| | : | |
| Appellant | : | No. 2304 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006628-2017

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JANUARY 14, 2021**

Appellant, Brent Thomas, appeals from the aggregate judgment of sentence of five to fifteen years of confinement followed by seven years of probation, which was imposed after his conviction at a bench trial for:  one count of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance by a person not registered ("PWID"); two counts of persons not to possess, use, manufacture, control, sell or transfer firearms; and two counts of firearms not to be carried without license.[1] Appellant claims the trial court erred in denying his motion to suppress evidence obtained as a result of a vehicle stop.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. §§ 6105(a)(1) and 6106(a)(1), respectively.

The trial court recounted the factual background as follows:[2]

On April 23, 2017, at 11:07 a.m., Philadelphia Police Officer Matthew Rivera and his partner were on routine patrol near Howard and York Streets in Philadelphia, high drug [and] violent crimes area in which Officer Rivera made about sixty prior arrests for narcotics violations, when Officer Rivera observed a silver Cadillac DeVille with heavily tinted windows in violation of the Pennsylvania Motor Vehicle Code, being operated in the 100 block of West York Street. N.T., 7/30/18, [at] 7-8, 16-17, 57.[2] When the operator of the Cadillac, Appellant herein, disregarded two stop signs, Officer Rivera and his partner signaled Appellant to stop the car, which was registered to Appellant. [*Id.* at] 7-9, 23. Appellant stopped the car and Officer Rivera exited his patrol car and walked to the driver's side of the vehicle . . . [*Id.* at] 9. Appellant then opened his window and began speaking with Officer Rivera. [*Id.*]

   [2] The tint made it impossible to see into the vehicle. N.T., 7/30/18, [at] 9.

Officer Rivera asked Appellant for his license, vehicle registration, and proof of insurance. Appellant gave Officer Rivera his license and stated that the registration and insurance cards were in the trunk and that a search warrant would be needed for the officer to obtain those items. [*Id.* at] 9-10.

During their conversation Appellant began reaching around in his seat which made Officer Rivera nervous that there was a weapon in the car or that Appellant was armed with a weapon. He then ordered Appellant to exit his vehicle. [*Id.* at] 10-11.

Prior to ordering Appellant to get out of the car, the officer noticed a large bulge on Appellant's left side and detected the odor of burnt marijuana emanating from the inside of the car. [*Id.* at] 10-11, 28-31. Appellant stated that he did not smoke marijuana in the car but that a friend did. [*Id.* at] 32, 50.

_____

[2] According to the trial court opinion, "The bulk of the evidence was presented during the suppression hearing and all of it except for hearsay testimony was incorporated into Appellant's trial." Trial Court Opinion, dated November 27, 2019, at 2 n.1 (citing N.T., 7/30/2018, at 112, 116).

After Appellant got out of his car, Officer Rivera patted him down for weapons and discovered that the large bulge he saw was a wallet in his back pocket which had $506.00 in it. [*Id.* at] 11, 14. Additionally, Officer Rivera's partner informed him that he saw a plastic container containing bundles of money that totaled $5,386.00[. *Id.* at] 11-12, 14, 16. Based on his observations, experience, and training as a police officer, including the large amount of money on Appellant's person and in the vehicle, along with the smell of burnt marijuana, Officer Rivera believed that the car contained drugs and he decided to call for a K-9 Unit. At this time, Appellant was then placed in the officers' patrol car. [*Id.* at] 11-12.

Once the K-9 Unit arrived approximately a half hour after the request was made, the dog reacted to the car's center console, the driver's door, and the trunk. [*Id.* at] 12-13, 57. Officer Rivera advised Appellant of the results of the dog search and then contacted East Detectives for direction about how he should proceed. [*Id.* at] 13. They advised Officer Rivera that he had sufficient grounds to conduct a warrantless search of the car and had permission to do so. Upon opening the trunk of the car, he observed in plain view eleven bundles containing fifteen packets filled with heroin weighing 4.975 grams. [*Id.* at] 13, 113. Officer Rivera then lifted the cover of the spare tire compartment and observed two loaded Glock hand guns. [*Id.* at] 13.

Officer Rivera advised Appellant about his discovery of the heroin and handguns and commenced a search of the interior of the car. That search yielded:

A black pistol holster; a black Taurus box; [a] Fridays container, which was holding the money; and an amber pill bottle was recovered in the center console with a white powdery substance and a black cell phone, all placed on property receipt 3290825.

[*Id.* at] 14. The incident ended at 12:19 a.m. [*Id.* at] 57.

Trial Court Opinion, dated November 27, 2019, at 2-4 (some formatting).

On July 30, 2019, the trial court denied Appellant's suppression motion. The case proceeded immediately to trial, at the conclusion of which the trial court rendered guilty verdicts.

"Appellant then made a Motion for Extraordinary Relief, requesting reconsideration of the denial of his Motion to Suppress. Th[e trial c]ourt denied the Motion." *Id.* at 1.

On July 12, 2019, the trial court sentenced Appellant to five to ten years of confinement for PWID, five to fifteen years of confinement for each count of persons not to possess firearms, and seven years of probation for firearms not to be carried without license. All terms of confinement are to be served concurrently. The probationary sentences are to be served consecutively to confinement but concurrently to each other. Accordingly, Appellant's aggregate judgement of sentence is the aforementioned five to fifteen years of confinement followed by seven years of probation. Appellant did not file any post-sentence motions. On August 12, 2019, Appellant filed this timely[3] appeal.[4]

On appeal, Appellant presents the following issue for our review:

Did the trial court err when it denied [Appellant]'s pre-trial motion to suppress physical evidence where:

- the arresting officer improperly extended an initial traffic stop (based upon an alleged Motor Vehicle Code violation) in order to conduct a search by another officer and his narcotic detecting dog without requisite reasonable suspicion and/or probable cause in

---

[3] Thirty days after July 12, 2019, was Sunday, August 11, 2019. The next business day thereafter was Monday, August 12, 2019. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

[4] Appellant filed his statement of errors complained of on appeal on September 3, 2019. The trial court entered its opinion on November 27, 2019.

> violation of, *inter alia*, [A]ppellant's rights under the Fourth Amendment of the U.S. Constitution, Article I, §§ 8 and 9 of the Pennsylvania Constitution; should the controlled substances and firearms recovered after the search by the police dog have been suppressed as fruit of the poisonous tree?

Appellant's Brief at 5.

> In reviewing the denial of a suppression motion, our role is to determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Yim*, 195 A.3d 922, 926 (Pa. Super. 2018) (citations and internal brackets omitted). Our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018).

> We further note:

> It is well-established that there are three categories of interaction between citizens and police officers. . . . The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional

equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Freeman***, 150 A.3d 32, 35 (Pa. Super. 2016). "[T]here need not be probable cause to conduct a canine search of a place; rather, the police need merely have reasonable suspicion for believing that narcotics would be found in the place subject to the canine sniff." ***Commonwealth v. Rogers***, 849 A.2d 1185, 1190 (Pa. 2004).

Appellant does not challenge the propriety of the initial stop of his vehicle. ***See*** Appellant's Brief at 27-28. Instead, his argument focuses solely on the search and seizure of the items recovered following the canine sniff search:

> Specifically, Appellant argue[s] that Officer Rivera lacked the requisite reasonable suspicion to prolong the traffic stop for 30 to 45 minutes in order to conduct a K-9 unit sniff test. Accordingly, [Appellant] argue[s], the fruits of the search occurring after this unlawful detention were illegally seized and due to be suppressed.

***Id.*** at 27.

In reviewing Appellant's claim that he was unlawfully detained, we scrutinize the record, mindful of the Supreme Court's directive when presented with a defendant who has been seized by a police officer pursuant to a valid traffic stop:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. ***Commonwealth v. Cook***, 558 Pa. 50, 735 A.2d 673, 676 ( [Pa.] 1999). This standard, less stringent than probable cause, is commonly known as reasonable suspicion.' ***Id.*** In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. ***In re D.M.***, 566 Pa. 445, 781 A.2d 1161, 1163

(2001). In making this determination, we must give 'due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience.' ***Cook***, 735 A.2d at 676, *quoting* ***Terry v. Ohio***, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, '[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer.' ***Cook***, 735 A.2d at 676.

***In Interest of A.A.***, 195 A.3d 896, 904 (Pa. 2018).

We turn to Pennsylvania precedents addressing similar facts. In ***Freeman***, 150 A.3d at 33, 37-38, following a vehicle stop, the appellant appeared nervous, and the state trooper conducting the stop noticed an unusual smell in the vehicle. When asked where he was travelling, the appellant told him that he was going to Binghamton, New York, which the trooper knew was "a destination area for the delivery of controlled substances." ***Id.*** at 38. The trooper requested a canine unit to perform a search of the vehicle due to suspicion of criminal activity. ***Id.*** at 34. After the canine "indicated" on the vehicle's trunk, it was searched, and "80 pounds of marijuana was discovered along with other paraphernalia" in the trunk. ***Id.*** at 34, 40. The appellant challenged the legality of the search. ***Id.*** at 36. The trial court found "that the search was lawful[,]" *id.* at 40, and this Court agreed, stating:

We recognize that, when viewed in isolation, many of the facts on which the troopers relied appear innocuous. We would hesitate to hold that a vehicle may be detained for more than an hour and subjected to a canine search merely because it had been rented for a one-way trip from New York to Binghamton, a purported drug destination, or because the driver, when stopped, appeared

- 7 -

agitated. But we are required to review the circumstances in their totality, and, upon doing so, we conclude that the evidence was sufficient to support the trial court's determination that the troopers' detention of Appellant was supported by reasonable suspicion.

*Id.* at 41.

Analogously, in the current action, following a vehicle stop, Appellant was nervously looking around inside his vehicle, and police noticed an unusual smell emanating therefrom. ***Compare*** Trial Court Opinion, dated November 27, 2019, at 3 (citing N.T., 7/30/2018, at 10-11, 28-31), ***with Freeman***, 150 A.3d at 33, 37-38. Similar to how the appellant in ***Freeman*** was travelling to a location known for its drug activity, Appellant was driving in a high-crime area, known for its drug activity. ***Compare*** Trial Court Opinion, dated November 27, 2019, at 2, ***with Freeman***, 150 A.3d at 38. Given the parallels between the facts of the current appeal and those of ***Freeman***, we likewise find that the canine sniff search of Appellant's vehicle was legal. As with ***Freeman***, 150 A.3d at 41, although each fact, when viewed in isolation, may be innocuous, when the circumstances are viewed in their totality, they demonstrate that Appellant's detention was supported by probable cause.

Similarly, in ***Commonwealth v. Kemp***, 961 A.2d 1247, 1250-51 (Pa. Super. 2008) (*en banc*), a state trooper observed a vehicle with heavily tinted windows in violation of the Pennsylvania Motor Vehicle Code, which gave him probable cause to initiate a valid vehicle stop. During the stop, the trooper noticed a strong smell emanating from the vehicle and observed that the

driver was nervous. *Id.* at 1254. This Court concluded that "the facts adduced by [the state trooper] during the course of the traffic stop clearly and unequivocally gave him reason to suspect that [the a]ppellant . . . [was] in possession of a controlled substance, and thus, there were sufficient facts to justify the investigatory detention." *Id.*

In the current case, the officer also observed heavily tinted windows in violation of the Pennsylvania Motor Vehicle Code, smelled an unusual odor coming from Appellant's vehicle, and saw Appellant searching around nervously. *Compare* Trial Court Opinion, dated November 27, 2019, at 2-3 (citing N.T., 7/30/2018, at 7-8, 10-11, 16-17, 28-31, 57), *with Kemp*, 961 A.2d at 1250-51, 1254. These facts consequently gave the officer reason to suspect that Appellant was in possession of a controlled substance, and, ergo, there were sufficient facts to justify the investigatory detention. *Kemp*, 961 A.2d at 1254.

Furthermore, Officer Rivera testified that, in addition to Appellant's behavior and to the odor of marijuana, "due to [his] training and experience . . . the money" was also a factor in his decision "to call [the] K-9 to conduct a frisk of [Appellant's] vehicle." N.T., 7/30/2018, at 11. This Court has previously found a "large amount of cash on [an appellant's] person [to be an] item[] associated with the drug trade." *Commonwealth v. McClellan*,

178 A.3d 874, 882 (Pa. Super. 2018).[5]  Accordingly, the bundle of cash in Appellant's pocket and the stacks of banknotes on the floor of his automobile were appropriate considerations contributing to Officer Rivera's reasonable suspicion that Appellant was delivering or otherwise possessed a controlled substance.  **Compare** Trial Court Opinion, dated November 27, 2019, at 3 (citing N.T., 7/30/2018, at 11-12, 14, 16), **with McClellan**, 178 A.3d at 882.

In his brief, Appellant relies heavily upon **Commonwealth v. Scott**, 210 A.3d 359 (Pa. Super. 2019).  Appellant's Brief at 29-32.  However, that case is distinguishable from the current action, because the issue in **Scott**, 210 A.3d at 363-64, was whether the officer had **probable cause** to search the trunk of a vehicle, whereas, in the current appeal, the question is whether the officer had a **reasonable suspicion** to conduct a canine search of Appellant's vehicle.  **Compare** Appellant's Brief at 29-32 (arguing **Scott**) **with id.** at 5, 27 (arguing reasonable suspicion); **see also Rogers**, 849 A.2d at 1196 (reasonable suspicion required for canine search); **Freeman**, 150 A.3d

---

[5] In addition, at least one other jurisdiction has concluded that a large amount of cash on a defendant's person is a valid consideration supporting a reasonable suspicion of illegal activity.  For example, in **United States v. Brown**, 618 F. App'x 743, 745-46 (4th Cir. 2015), $1,900 in cash was found on Brown's person; this fact was an appropriate consideration in support of the officer's reasonable suspicion of illegal activity, hence authorizing the officer to order a canine scan of Brown's car and to detain the vehicle for an additional 20 to 30 minutes.  "[A]lthough we are not bound by decisions from ... courts in other jurisdictions, we may use them for guidance to the degree we find them useful, persuasive, and ... not incompatible with Pennsylvania law."  **Commonwealth v. Purnell**, 2020 PA Super 127, *17 n.8 (filed May 28, 2020) (citations omitted).

at 35 (differentiating reasonable suspicion for investigative detention and probable cause for custodial detention).

Guided by the above precedents, we conclude that the trial court did not err in determining that all of the circumstances in this case—in their totality—supported Officer Rivera's reasonable suspicion of criminal conduct. As in **Freeman**, 150 A.3d at 43, "[w]hile this may appear to be a close case, we discern no basis to disturb the trial court's denial of Appellant's suppression motion." Consequently, we affirm the judgment of sentence.[6]

_____

[6] Appellant's brief is unclear as to whether he is also complaining about the duration of the delay while waiting for the canine to arrive. **See, e.g.**, Appellant's Brief at 27 ("Officer Rivera lacked the requisite reasonable suspicion to prolong the traffic stop for 30 to 45 minutes in order to conduct a K-9 unit sniff test"), 34-35 (comparing current matter to **Rodriguez v. United States**, 135 S.Ct. 1609, 1612-14 (2015), where an extension of a traffic stop by only seven or eight minutes for a canine sniff search of the vehicle was found to "exceed[] the time needed to handle the matter for which the stop was made" and therefore "violat[ing] the Constitution's shield against unreasonable seizures").

To the extent that Appellant is challenging the duration of the detention, we are not persuaded that any such argument would change our conclusion. In **Freeman**, it was similarly uncontroverted that the appellant was "detained for a significant period of time[.]" 150 A.3d at 43. "In assessing whether a detention is too long in duration to be justified as an investigative stop," **id.** at 43, this Court cited the test articulated in **United States v. Sharpe**, 470 U.S. 675, 686 (1985): "we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." **See also Commonwealth v. Ellis**, 662 A.3d 1043, 1049 (Pa. 1995) (referencing **Sharpe** to hold that an officer's detention of an appellant was "no more than an investigative detention supported by reasonable suspicion [where the a]ppellant was detained for approximately

- 11 -

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: <u>1/14/2021</u>

---

ten to fifteen minutes in order to allow [another officer] to view the crime scene and transport the witness").

In **Freeman** and in the instant action, the detention at issue was much longer than that before our Supreme Court in **Ellis**. **See Freeman**, 150 A.3d at 44 ("one-hour-plus time frame"). Nevertheless, as in **Freeman**, **id.**, the record in the instant appeal shows nothing to indicate that the police failed to act reasonably and diligently in pursuing their suspicions and indicates no delay in conducting the search once the canine arrived. **See** Trial Court Opinion, dated November 27, 2019, at 3 (citing N.T., 7/30/2018, at 12-13, 57). Thus, to the extent that Appellant challenges the duration of his detention, we hold that the length of time of said detention was not unreasonable.