J-S67033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HUNTER WILLIAM GRIMES | : | |
| | : | |
| Appellant | : | No. 980 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 15, 2019
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001414-2018

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JANUARY 31, 2020**

Appellant Hunter William Grimes appeals the judgment of sentence entered by the Court of Common Pleas of Cumberland County after Appellant was convicted of two counts of Driving Under the Influence of a Controlled Substance (DUI).[1] Appellant contends that the trial court erred in denying his suppression motion and challenges the sufficiency of the evidence supporting his convictions. After careful review, we affirm.

On November 24, 2017, at approximately 1:00 p.m., Trooper Zeina Black was on patrol in West Pennsboro Township, Cumberland County when, using radar, she clocked Appellant's vehicle traveling 55 miles per hour (mph)

---

[*] Former Justice specially assigned to the Superior Court.
[1] 75 Pa.C.S.A. § 3802(d)(1)(i) (DUI Controlled Substance – Schedule I – second offense); § 3802(d)(1)(iii) (DUI Controlled Substance – Metabolite – second offense). Appellant was acquitted of the DUI charge at 75 Pa.C.S.A. § 3802(d)(2) (DUI Controlled Substance – Impaired Ability – second offense).

in a posted 35-mph zone. Trooper Black initiated a traffic stop of Appellant's vehicle for exceeding the speed limit. Notes of Testimony ("N.T."), Suppression Hearing, 6/5/19, at 5-7.

Upon initiating contact with Appellant, Trooper Black noticed Appellant was "visibly" and "uncontrollably" shaking. *Id*. at 7, 11. While Trooper Black admitted that motorists pulled over for a traffic stop at times exhibit shaking due to nervousness, Trooper Black indicated that Appellant's high degree of shaking was unusual. *Id*. at 14. When Trooper Black asked Appellant why he was shaking, Appellant did not offer any reason. *Id*. at 7.

Trooper Black also noticed that Appellant's pupils were "pinpoint constricted." *Id*. When asked why his pupils were constricted, Appellant indicated that he just woke up. *Id*. Trooper Black did not detect any odor of alcohol or marijuana in the vehicle. *Id*. at 7, 15.

At that point, Trooper Black suspected Appellant was under the influence of a controlled substance and deemed it necessary to detain him for further investigation. However, as Trooper Black felt the assessment of Appellant's intoxication was "beyond [her] training," she did not perform field sobriety testing, but contacted her barracks to seek assistance from an officer certified in Advanced Roadside Impaired Driving Enforcement (ARIDE). *Id*. at 8.

Trooper David Highhouse, an ARIDE-certified officer, responded to assist Trooper Black in evaluating Appellant's suspected intoxication. Trooper Highhouse first administered Standard Field Sobriety Testing, in which Appellant exhibited several indicators of intoxication on both the "walk and

turn" and "one leg stand" tests. *Id*. at 19. While Trooper Highhouse was explaining the "walk and turn" test, Appellant was unable to remain still and stepped off the line twice. *Id*. at 20. Once instructed, Appellant "missed the heel to toe sequence on all steps." *Id*. He also "made an improper turn and on the return nine steps, he stepped off line by going in a diagonal manner instead of down the straight line." *Id*. During the "one leg stand test," Appellant swayed and put his foot down before the test was complete. *Id*.

Trooper Highhouse also administered two ARIDE tests. First, Trooper Highhouse conducted the Lack of Convergence test after which he found that Appellant's eyes converged normally. *Id*. at 23. Second, Trooper Highhouse administered the modified Romberg balance test, in which an individual is asked to tilt his head back, balance, and estimate the passage of thirty seconds in his head. *Id*. at 23. When Appellant submitted to this test, Appellant exhibited eye and body tremors and swayed back and forth. *Id*. at 24. In estimating the thirty-second interval, Appellant waited thirty-eight seconds, eight seconds longer than necessary. *Id*.

From these tests, Trooper Highhouse admitted he could not conclusively find that Appellant was under the influence of marijuana, but was able to determine Appellant exhibited several indicators of impairment. *Id*. at 24. Based on this assessment, Trooper Black transported Appellant to the Carlisle barracks for an evaluation by a Drug Recognition Expert. *Id*. at 16. Trooper Black indicated that, at that point, she had not arrested Appellant, but had simply detained him for further investigation. *Id*. at 9, 16.

At the Carlisle barracks, Appellant was evaluated by Trooper Ron Carey, an officer with certification as a Drug Recognition Expert (DRE) and experience teaching classes on field sobriety testing and ARIDE testing. N.T. at 35-36. Trooper Carey provided Appellant with *Miranda* warnings before the evaluation, noting that Appellant had been taken into custody based on suspicion of DUI. *Id*. at 38-39. Trooper Carey explained that as a DRE expert, he is trained to perform additional tests to examine specific physical indicators such as blood pressure, pulse, pupil response, etc. *Id*. at 39.

Trooper Carey noted numerous indicators of Appellant's intoxication, including his slow coordination, slow and lethargic responses, rebound dilation of his pupils, elevated blood pressure and pulse, body and eye tremors, and his inability to estimate time in the Romberg balance test. Trooper Carey also observed a "green, pasty film" on Appellant's tongue, which is indicative of the ingestion of marijuana. *Id*. at 41. Based on his observations and test results, Trooper Carey determined that Appellant was "incapable of safely operating a motor vehicle under the influence of cannabis." *Id*. at 42. [2]

Thereafter, Appellant was transported to a local hospital, where he consented to a blood draw, which confirmed the existence of cannabis in Appellant's blood, measuring Delta 9 THC (the active ingredient in marijuana) at 7.9 nanograms per milliliter and Delta 9 carboxy THC 9 (the metabolite of THC) at 55 nanograms per milliliter. N.T. Trial, 12/4/18, at 25, 29.

---

[2] The parties use the terms "marijuana" and "cannabis" interchangeably.

- 4 -

After Appellant was charged with the aforementioned DUI counts and two summary offenses, he filed a suppression motion. After a hearing, the trial court subsequently denied Appellant's suppression motion. In doing so, the trial court found that Trooper Black's detention was supported by reasonable suspicion that Appellant was under the influence of a controlled substance. The trial court also suggested that Trooper Black did not escalate the investigative detention into a custodial arrest when she transported Appellant to her barracks for further evaluation from a drug recognition expert. Trial Court Opinion, 11/28/18, at 3.

At a subsequent bench trial, on December 4, 2018, the trial court convicted Appellant of two counts of DUI at 75 Pa.C.S.A. § 3802(d)(1)(i) (DUI Controlled Substance – Schedule I – second offense); § 3802(d)(1)(iii) (DUI Controlled Substance – Metabolite – second offense). The trial court acquitted Appellant of the DUI charge under 75 Pa.C.S.A. § 3802(d)(2) (DUI Controlled Substance – Impaired Ability – second offense).

On January 15, 2019, after finding Appellant's charges merged for sentencing, the trial court sentenced Appellant to ninety days to five years' imprisonment. Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raised the following issues for review on appeal in his 1925(b) statement:

1.   The Court erred in denying Appellant's motion to suppress by determining that there was a necessary level of suspicion to detain [Appellant] beyond the initial traffic stop for speeding when Trooper Black viewed only shaking and constricted pupils on a bright sunny day, when the Commonwealth failed to demonstrate that the Trooper possessed the requisite training and experience to determine non-alcohol impairment, when SFST's were not initiated prior to an extension of the stop's duration by Trooper Black to call an ARIDE officer, when [Appellant]was observed to be driving in a smooth manner without obvious weaving, and when [Appellant] did not smell of illegal substances nor alcohol.

2.   The Court erred in finding [Appellant] guilty of Counts 1 and 2 (DUI Controlled Substance –Metabolite) on a *per se* basis when, under Pennsylvania Commonwealth law, marijuana can be a substance prescribed to an individual and the Court did not find evidence of Appellant's impairment as evidenced by a non guilty verdict on Count 3 (DUI Controlled Substance – Impairment).

3.   Insufficient evidence was presented by the Commonwealth at trial to find [Appellant] guilty of Counts 1 and 2.

1925(b) Statement, at 1-2.

Appellant first claimed that the trial court erred in denying his suppression motion as Trooper Black did not have the requisite suspicion to detain him beyond the initial traffic stop. Our standard of review is as follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court

- 6 -

turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa.Super. 2019) (citations and quotation marks omitted). In addition, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa.Super. 2016) (*citing In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1087 (2013)).

In analyzing Appellant's suppression challenge, we are guided by the following principles:

[the] Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. To secure the right of citizens to be free from such unreasonable intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. We have long recognized that there are three levels of intrusion involved in interactions between members of the public and the police. The first is a mere encounter, which requires no level of suspicion at all. The second level is an investigative detention, which must be supported by reasonable suspicion. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Soto*, 202 A.3d 80, 90 (Pa.Super. 2018) (quoting *Commonwealth v. Walls*, 53 A.3d 889, 892–93 (Pa.Super. 2012)).

Appellant concedes that the initial traffic stop of his vehicle was lawful as Trooper Black had observed Appellant's vehicle exceeding the speed limit by 20 mph. The parties and trial court agree that Trooper Black extended the

initial traffic stop into a separate investigative detention when she detained Appellant so that he could evaluated by Trooper Highhouse, who was certified in advanced impaired driving assessment.

Appellant specifically challenges whether Trooper Black had reasonable suspicion to detain Appellant beyond the initial stop to assess whether he was under the influence of a controlled substance. It is well-established that:

> [a] police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. **Commonwealth v. Cook**, 558 Pa. 50, 735 A.2d 673, 676 (Pa. 1999). 'This standard, less stringent than probable cause, is commonly known as reasonable suspicion.' **Id**. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. **In re D.M.**, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give 'due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience.' **Cook**, 735 A.2d at 676, *quoting* **Terry v. Ohio**, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, '[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer.' **Cook**, 735 A.2d at 676.

**In Interest of A.A**., ____Pa.____, 195 A.3d 896, 904 (Pa. 2018) (quoting

**Commonwealth v. Rogers**, 578 Pa. 127, 849 A.2d 1185, 1189 (2004)).

In this case, after Appellant was initial stopped for traveling 20 mph over the speed limit, Trooper Black noticed that Appellant was shaking "uncontrollably" and exhibited constricted pupils, which Trooper Black described as "pinpoint." N.T. at 7, 11. Appellant could not explain these

symptoms. Further, Trooper Black specifically noted that she did not smell any odor of alcohol or marijuana in the vehicle.

Based on these observations, Trooper Black surmised that Appellant was under the influence of a controlled substance and felt assessing Appellant's intoxication level was beyond her training level. As such, Trooper Black detained Appellant to wait for the assistance of Trooper Highhouse, who was certified to perform advanced roadside impair driving evaluations.

Viewing the totality of the circumstances in this case, we conclude that the trial court did not err in finding Trooper Black had reasonable suspicion that Appellant had driven under the influence of a controlled substance other than alcohol, which justified her decision to extend the detention of Appellant for further investigation.

We note that Appellant devotes the majority of his brief to argue that he was subjected to an illegal arrest unsupported by probable cause when Trooper Black transported him to the state police barracks for further testing by a Drug Recognition Expert.

However, Appellant did not raise this specific argument in his 1925(b) statement. This Court has emphasized that "issues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." ***Commonwealth v. Sexton***, ____A.3d____, 2019 PA Super 325 (Pa.Super. Oct.

28, 2019) (quoting *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007)).

Appellant's 1925(b) statement limits his suppression challenge to claim that Trooper Black did not have the requisite suspicion to extend the initial traffic stop to seek ARIDE testing by Trooper Highhouse to determine if Appellant was driving under the influence of a controlled substance. As Appellant did not specifically raise any argument concerning the validity of his arrest in his 1925(b) statement, Appellant has waived this issue on appeal.

Appellant also challenges the sufficiency of the evidence supporting his DUI convictions. Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> *Commonwealth v. Leaner*, 202 A.3d 749, 768, (Pa.Super. 2019) (citation omitted). To reiterate, the jury, as the trier of

- 10 -

fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. ***Commonwealth v. Melvin***, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). In conducting review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. ***Id.*** at 39-40.

***Commonwealth v. Baumgartner***, 206 A.3d 11, 14–15 (Pa.Super. 2019).

Appellant was convicted of two counts of DUI under Sections 3802(d)(1)(i) and (iii) of the Vehicle Code, which provide:

> **(d)    Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> > (1) There is in the individual's blood any amount of a:
> >
> > > (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;
> > >
> > > (ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or
> > >
> > > (iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802(d).   Marijuana has been designated as a Section I controlled substance.  ***See*** 35 P.S. § 780-104(1)(iv).

This Court has provided that "a conviction under Section 3802(d)(1) does not require that a driver be impaired; rather, it prohibits the operation of a motor vehicle by *any* driver who has *any* amount of specifically enumerated controlled substances in his blood, regardless of impairment." ***Commonwealth v. Etchison***, 916 A.2d 1169, 1174 (Pa.Super. 2007), *aff'd,* 596 Pa. 351, 943 A.2d 262 (2008) (emphasis in original).

Appellant's sufficiency challenge is meritless as the Commonwealth presented evidence that Appellant drove a vehicle with measured amounts of marijuana and its metabolite in his blood in violation of both Sections 3802(d)(i) and (iii).

We are not persuaded to reach a different result by Appellant's citation to the Medical Marijuana Act, which states that "[s]cientific evidence suggests that medical marijuana is one potential therapy that may mitigate suffering in some patients and also enhance quality of life."  35 P.S. § 10231.102(1). Appellant has never claimed that he was prescribed marijuana.  Moreover, even assuming *arguendo* that Appellant was prescribed marijuana, "[t]he fact that a person charged with violating this chapter is or has been legally entitled to use alcohol or controlled substances is not a defense to a charge of violating this chapter."  75 Pa.C.S.A. § 3810.  As such, the trial court did not err in denying Appellant's sufficiency claims.

For the foregoing reasons, we affirm the judgment of sentence

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/31/2020