J-A01023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL TEIL CHAPMAN :
:
Appellant : No. 1421 EDA 2019

Appeal from the Judgment of Sentence Entered April 15, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002046-2017

BEFORE: NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 04, 2020**

Michael Teil Chapman (Appellant) appeals from the judgment of

sentence imposed after the trial court found him guilty of possession with

intent to manufacture or deliver a controlled substance (PWID).[1] On appeal,

Appellant challenges the denial of his suppression motion. After careful

review, we vacate Appellant's judgment of sentence, reverse the order

denying the suppression motion, and remand this matter to the trial court.

The trial court summarized the facts as follows:

> On August 18, 2017, Trooper Joseph Urban of the Pennsylvania
> State Police observed a vehicle traveling on Interstate 380 North
> in the left passing lane for approximately a mile, with the right
> lane readily available. The vehicle's speed also fluctuated
> between 65 and 73 miles per hour in a 70 mile per hour zone.
> Trooper Urban made these observations while following

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[Appellant] for about one mile. Trooper Urban pulled the vehicle over and initiated a traffic stop. Trooper Urban noticed that the registration of the vehicle began with "HPC," which indicated to him that it was a newer registration, even though the vehicle was an older model.

During the stop, Trooper Urban noticed [Appellant] exhibiting visible signs of extreme nervousness. Trooper Urban saw [Appellant]'s hand shaking, and several facial tremors.

Following a discussion with [Appellant], Trooper Urban decided to issue a warning in lieu of a citation. Trooper Urban stated to [Appellant] that he appeared "overly nervous," noting that his eyelid had quivered and his voice cracked. He immediately asked [Appellant] if there was anything illicit in the vehicle. Trooper Urban then asked for consent to search the vehicle, and when [Appellant] declined[,] Trooper Urban said "You have every right to refuse consent," and "I don't want to talk you into it," instead indicating he would call for a canine team to come to sniff the vehicle. Trooper Urban provided [Appellant] the consent form and made efforts to go over it with him, but when [Appellant] continued to waiver about consenting to the search, Trooper Urban decided to call the canine unit. While waiting, Trooper Urban twice had to tell [Appellant] he could not return to his vehicle.

About 45 minutes after calling the canine unit, the dog, Micho, and his handler, Corporal Doblovasky, arrived and conducted an exterior search of the vehicle. Micho alerted, signaling the presence of narcotics. Based upon the alert, Trooper Urban and Troopers Sohns and Doblovasky conducted a search of the interior of the vehicle. There were groceries in the rear of the vehicle and the Troopers noted that even the perishable food items were room temperature, indicating to the Troopers to examine them further. Upon close inspection of the groceries, the Troopers found approximately 220 grams of cocaine in sealed bags inside a plastic Folgers coffee container, located in the back of the vehicle.

On August 18, 2017, a criminal complaint was filed against [Appellant]. A preliminary hearing was held on August 30, 2017 and the charges were bound over. Formal arraignment was held on October 11, 2017. On November 6, 2017, [Appellant] filed his [suppression motion]. We held a hearing on [Appellant]'s

[m]otion on January 18, 2018, briefs were ordered and submitted[.]

Trial Court Opinion, 7/6/18, at 1-3 (record citations omitted). On July 6, 2018, the trial court denied Appellant's suppression motion.

On March 1, 2019, following a bench trial, the trial court found Appellant guilty of PWID. On April 15, 2019, the trial court sentenced Appellant to 4 to 24 months minus one day of incarceration. On May 7, 2019, Appellant timely appealed to this Court.

Appellant presents the following issues for review:

A. Did the trial court err in finding that the traffic stop was valid based on "reasonable suspicion" that [Appellant] had committed a non-investigable traffic offense?

B. Did the trial court err in finding that the police had "reasonable suspicion" to detain [Appellant] after the traffic stop?

C. Did the trial court err in finding that it was reasonable to detain [Appellant] for over 1 hour when he didn't even receive a citation?

Appellant's Brief at 4.

Each of Appellant's three issues challenge the trial court's denial of his suppression motion. Therefore, we address these issues together, mindful of the following:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are

- 3 -

supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted). Importantly, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

First, Appellant argues that the trial court erred in determining his traffic stop was constitutional. Specifically, Appellant asserts that the trial court wrongly concluded that Trooper Urban had reasonable suspicion to stop Appellant's vehicle for violating 75 Pa.C.S.A. § 3313(d)(1) of the Pennsylvania Vehicle Code. Appellant contends that a police officer must have probable cause to stop an individual suspected of violating Section 3313(d)(1).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa. Super. 2007). Courts in

this Commonwealth have recognized three types of interactions between the police and a citizen: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

***Commonwealth v. Newsome***, 170 A.3d 1151, 1154 (Pa. Super. 2017).

With respect to the quantum of cause necessary to conduct a traffic stop, the relevant statutory authority is Section 6308(b) of the Pennsylvania Vehicle Code, which provides:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

Section 6308(b) requires only reasonable suspicion in support of a vehicle stop for gathering information necessary to enforce the Vehicle Code violation. However, a police officer must have probable cause to support a vehicle stop where the officer's investigation following the stop serves no "investigatory purpose relevant to the suspected [Motor Vehicle Code]

violation." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), ***appeal denied***, 25 A.3d 397 (Pa. 2011).

Our Supreme Court explained:

Indeed, the language of § 6308 reflects this very intent. Stops based on reasonable suspicion are allowed for a stated investigatory purpose: "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa.C.S. § 6308(b). This is conceptually equivalent to the purpose of a ***Terry***[2] stop. It does not allow all stops to be based on the lower quantum – it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions. We interpret the legislature's modification of § 6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the Vehicle Code than is constitutionally required for all other stops.

***Commonwealth v. Chase***, 960 A.2d 108, 116 (Pa. 2008). "[I]f the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop – if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion." ***Id.*** at 115. Therefore, "when the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional." ***Id.***

Trooper Urban stopped Appellant based on his determination that Appellant had violated Section 3313(d)(1) of the Pennsylvania Vehicle Code. Section 3313(d)(1) provides:

---

[2] ***Terry v. Ohio***, 392 U.S. 1 (1968).

- 6 -

**(d) Driving in right lane.--**

(1) Except as provided in paragraph (2) and unless otherwise posted, upon all limited access highways having two or more lanes for traffic moving in the same direction, all vehicles shall be driven in the right-hand lanes when available for traffic except when any of the following conditions exist:

(i) When overtaking and passing another vehicle proceeding in the same direction.

(ii) When traveling at a speed greater than the traffic flow.

(iii) When moving left to allow traffic to merge.

(iv) When preparing for a left turn at an intersection, exit or into a private road or driveway when such left turn is legally permitted.

75 Pa.C.S.A. § 3313(d)(1).

With this authority in mind, we conclude that the trial court improperly determined that reasonable suspicion was the necessary quantum of cause for stopping Appellant under Section 3313(d)(1). Instead, Trooper Urban needed probable cause to stop Appellant for violating Section 3313(d)(1), as Trooper Urban could not have possessed a legitimate expectation of learning additional relevant information concerning whether Appellant was driving in the appropriate lane during the stop. *See Chase*, 960 A.2d at 115-16. Although the trial court incorrectly determined reasonable suspicion was the appropriate standard in this case, Appellant's traffic stop was nevertheless constitutional because it was supported by probable cause.

Probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in

the belief that an offense has been or is being committed." ***Commonwealth v. Stultz***, 114 A.3d 865, 883 (Pa. Super. 2015). Trooper Urban testified at Appellant's suppression hearing to observing the following:

> [Trooper Urban]: Upon catching up to [Appellant's] vehicle, I observed the vehicle traveling in the left lane when the right lane was readily available for travel. The vehicle was not passing anybody, did not exit on the left, never allowed any cars to merge on from the right.
>
> Q. Did it pass any entrance ramps? You said there were no entrance ramps?
>
> A. There were no entrance ramps -- there are no exit ramps when you exit on the left. This occurred for approximately one mile I observed this violation. So as a result of the violation, Pennsylvania Vehicle Code 3313(d)(1), I initiated a traffic stop.

N.T., 1/18/18, at 9.

The record reflects that Trooper Urban observed Appellant violating Section 3313(d)(1) for approximately one mile. Thus, although the trial court improperly identified reasonable suspicion as the appropriate quantum of cause necessary to stop Appellant in this case, Trooper Urban nevertheless had probable cause to stop Appellant for violating Section 3313(d)(1). Accordingly, Appellant's argument that his traffic stop was unconstitutional is meritless.

For his second and third issues, Appellant argues that Trooper Urban impermissibly extended the traffic stop and improperly conducted a canine sniff of the vehicle. Appellant contends that Trooper Urban lacked reasonable

suspicion of criminal activity beyond the initial reason for the stop and therefore, could not detain Appellant and his vehicle for a canine sniff.

During a traffic stop, an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). "[I]f there is a legitimate stop for a traffic violation . . . additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions." *Chase*, 960 A.2d at 115 n.5. This Court has held that such investigations, including a canine sniff of the exterior of a vehicle, must be supported by reasonable suspicion. *Commonwealth v. Harris*, 176 A.3d 1009, 1021 (Pa. Super. 2017) ("[C]onsidering the relatively minor privacy interest in the exterior of the vehicle and the minimal intrusion occasioned by a canine sniff, . . . mere reasonable suspicion, rather than probable cause, [is] required prior to [a dog] sniffing the exterior of [a] vehicle.").

Our Supreme Court has explained:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. *Commonwealth v. Cook*, [] 735 A.2d 673, 676 ([Pa.] 1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." *Id.* In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. *In re D.M.*, [] 781 A.2d 1161, 1163 ([Pa.] 2001). In making this determination, we must give "due weight . . . to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Cook*, 735 A.2d at 676 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 [] (1968)). Also, the

totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." [*Id.*]

*Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004).

We conclude that Trooper Urban lacked the reasonable suspicion necessary to detain Appellant for a canine sniff. Trooper Urban's testimony points to three reasons for his determination that he had reasonable suspicion to detain Appellant for a canine sniff of his vehicle. First, Appellant was traveling from Brooklyn, New York, a known source area, west on Interstates 80 and 380, a known drug corridor. N.T., 1/18/18, at 8, 26, 29. Second, although Appellant's license plate indicated that his automobile was a newly registered vehicle, he was actually driving "an older model SUV." *Id.* at 7. Third, Appellant exhibited abnormal and excessive nervousness while speaking with Trooper Urban. *Id.* at 26-27.

On their face, these factors are each innocuous. Although this Court has frequently stated that even a combination of innocent facts, when considered together, can warrant further investigation by the police, this case does not present such a situation. In short, the trial court based its finding of reasonable suspicion on Appellant becoming nervous after Trooper Urban pulled him over for driving in the left lane while traveling west from Brooklyn, New York along Interstates 80 and 380 in a used car. Even considering the totality of the circumstances, there is no indicia of criminal activity in this fact

scenario, as these set of facts could apply to any number of the many individuals who the police stop along Interstates 80 and 380 in Pennsylvania.

The only fact that arguably could point to criminal activity was Appellant's extreme and excessive nervousness. This Court, however, has repeatedly stated that "while nervous behavior is a relevant factor, nervousness alone is not dispositive and must be viewed in the totality of the circumstances." **Commonwealth v. Gray**, 896 A.2d 601, 606 n.7 (Pa. Super. 2006). Moreover,

> It is the rare person who is not agitated to some extent when stopped by police, even if the driver is a law-abiding citizen who simply failed to notice or repair a broken taillight or was unaware that he or she was driving above the speed limit. Whether described as nervousness, apprehension, concern or otherwise, forced interaction with a police officer is not an everyday occurrence for the average citizen.

**Commonwealth v. Cartagena**, 63 A.3d 294, 305-06 (Pa. Super. 2013) (*en banc*).

Based on our review of the certified record on appeal, we conclude that Trooper Urban lacked reasonable suspicion to extend his traffic stop of Appellant for a canine sniff. Accordingly, we vacate Appellant's judgment of sentence, reverse the order denying Appellant's suppression motion, and remand this matter to the trial court for proceedings consistent with this decision.

Judgment of sentence vacated. Suppression order reversed. Case remanded. Jurisdiction relinquished.

Judge Colins joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/20