**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DWAYNE RILEY | : | |
| | : | |
| Appellant | : | No. 1868 EDA 2020 |

Appeal from the PCRA Order Entered September 21, 2020
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0001141-2015

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 22, 2021**

Appellant, Dwayne Riley, appeals *pro se* from the order entered in the Bucks County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The facts were summarized as follows at Appellant's guilty plea hearing:

> On May 5, 2014, [Officer Gansky] along with other officers was conducting an investigation into several prostitutes that were running a business out of the Neshaminy Inn located at 2345 Old Lincoln Highway in Bensalem Township.
>
> In doing so they discovered through one of the individuals that they came in contact with that she had been in contact with [Appellant] via a cell phone.  That individual showed Officer Gansky her phone.  He observed text messages that said "I got that white girl, Perc 15's and loud."

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

Officer Gansky immediately recognized that to mean that the individual had cocaine, Percocets and marijuana.

What he did was he arranged with the confidential informant, the woman that had been found at the hotel, for a phone call to be made with [Appellant]. That phone call did, in fact, occur. It occurred on speakerphone. And Officer Gansky then heard [Appellant] on speakerphone saying that he, in fact, had an eighth of marijuana, white girl and percs. He indicated he had $60 worth of cocaine on him.

[Appellant] then asked where were the females, and the confidential informant advised that she was at the Neshaminy Inn.

A short time later [Appellant] arrived at the Neshaminy Inn. He was observed getting out of his vehicle and approaching Room 111, which is where the confidential informant told him she was, and knocked on the door.

When he knocked on the door, Officer Gansky was waiting for him. He was then apprehended and found to be in possession of $481, three bags of marijuana, four bags of cocaine, half an orange pill and 111 pills that were later determined to be Percocets.

There was an interview conducted, and during that interview Officer Gansky spoke to [Appellant] who indicated that he, in fact, was going to trade marijuana and cocaine in exchange for sex.

[Appellant] further admitted that he does sell the Percocets as well as the cocaine. He sells the Percocets for $10 a pill and the cocaine for $60.

(N.T. Guilty Plea Hearing, 12/5/16, at 8-11).

On November 23, 2016, Appellant filed a pretrial motion to suppress evidence found on his person and his subsequent statements to police, alleging that the police lacked probable cause to arrest him. The court held a

suppression hearing on November 29, 2016. At the conclusion of the hearing, the court denied Appellant's motion. On December 5, 2016, Appellant entered an open guilty plea to three counts of possession with intent to deliver a controlled substance ("PWID"). On that same day, the court sentenced Appellant to an aggregate term of four to eight years' incarceration. Appellant timely filed a post-sentence motion on December 12, 2016. The court denied that motion on December 21, 2016. Appellant did not file an appeal.

On May 8, 2017, Appellant timely filed a PCRA petition. The court appointed counsel, who filed an amended PCRA petition on August 17, 2017. On February 28, 2018, the court permitted Appellant to file a supplemental post-sentence motion *nunc pro tunc*. Appellant timely filed a supplemental post-sentence motion *nunc pro tunc* on March 8, 2018. Following a hearing, on May 3, 2018, the court reduced Appellant's aggregate sentence to three to six years' incarceration plus five years' probation. Appellant did not file an appeal.

On February 25, 2019, Appellant timely filed the current *pro se* PCRA petition. The court appointed PCRA counsel on March 13, 2019. Appellant filed a *pro se* supplemental PCRA petition on July 19, 2019. On August 23, 2019, Appellant filed a second *pro se* supplemental PCRA petition. Appointed counsel filed a **Turner**/**Finley**[2] no-merit letter on September 17, 2019. On

---

[2] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

October 3, 2019, Appellant filed a *pro se* response objecting to counsel's no merit letter. The Commonwealth filed its response to Appellant's objection on November 19, 2019. On December 6, 2019, Appellant filed a *pro se* reply to the Commonwealth's response. Appellant filed another *pro se* supplemental response raising PCRA counsel's ineffectiveness on December 23, 2019.

On May 22, 2020, the court issued notice of its intent to dismiss all of Appellant's claims without a hearing per Pa.R.Crim.P. 907, except his claim that prior counsel was ineffective for failing to file a direct appeal challenging the sentence imposed on May 3, 2018. The court held a hearing solely on this issue on July 2, 2020. On July 8, 2020, Appellant filed a *pro se* supplemental amended PCRA petition. The court issued another Rule 907 notice on July 21, 2020. On August 13, 2020, Appellant filed a *pro se* response. The court denied Appellant's PCRA petition, and it granted counsel's petition to withdraw on September 8, 2020. On September 21, 2020, the court vacated its September 8th order, because it had failed to advise Appellant of his appellate rights. On that same day, the court issued a new order denying Appellant's PCRA petition. On October 7, 2020, Appellant timely filed a *pro se* notice of appeal. The court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and none was filed.

Appellant raises these three issues on appeal:

> Whether PCRA counsel was ineffective for failing to amend [his] claim that, before advising Appellant to plead guilty, plea counsel was ineffective for failing to move and successfully suppress evidence found during an unlawful

- 4 -

***Terry***[3] pat and frisk search.

Whether [the] PCRA court erred in allowing counsel to withdraw and dismissed, without a hearing, Appellant's claim that plea counsel was ineffective for failing to move to suppress statements before advising Appellant to plead guilty, causing Appellant to enter an unknowing and involuntary plea.

Whether PCRA court erred in allowing counsel to withdraw and dismissed, without a hearing, Appellant's claim that plea counsel was ineffective for failing to move to suppress evidence found during an unlawful ***Terry*** pat and frisk search before advising Appellant to plead guilty, causing Appellant to enter an unknowing and involuntary plea.

(Appellant's Brief at vi).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. ***Commonwealth v. Conway***, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Boyd***, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any

---

3 ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

- 5 -

material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. ***Commonwealth v. Wah***, 42 A.3d 335 (Pa.Super. 2012).

For purposes of disposition, we combine Appellant's first and third issues. Appellant argues that plea counsel was ineffective for advising Appellant to plead guilty without first "moving to suppress evidence found during an unlawful ***Terry*** pat and frisk."[4] (Appellant's Brief at 7). Appellant concedes that plea counsel filed a suppression motion, but he asserts that motion only alleged that the police did not have probable cause to arrest and search him. Appellant maintains that the officers unlawfully searched inside his pockets, rather than merely patting down the outside of his clothing. Further, Appellant alleges that the court did not evaluate whether the officers conducted a proper ***Terry*** search because plea counsel failed to raise that argument.

Appellant claims that arguable merit exists to support his position because had counsel filed this motion, the contraband discovered inside his pockets would have been suppressed. Appellant avers that plea counsel did not have a reasonable basis for failing to challenge this search as a violation of ***Terry***. Appellant reasons that plea counsel's failure to challenge the unlawful ***Terry*** pat down caused him to enter an involuntary and unknowing

---

[4] Appellant concedes that the officers had "sufficient reasonable suspicion to detain [Appellant] to further investigate…" (***See*** Appellant's Brief at 16).

guilty plea. Appellant contends that he suffered prejudice because had this motion been filed the evidence would have been suppressed, and he would not have pled guilty. Appellant also alleges PCRA counsel's ineffectiveness for failing to amend his PCRA petition to include this claim. Appellant concludes that this Court should *sua sponte* "declare the illegally obtained evidence suppressed and [Appellant's] guilty plea involuntary and remand the matter back to Bucks County for a new trial." (Appellant's Brief at 33). We disagree.

Pennsylvania law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams, supra***. Counsel cannot be deemed ineffective for failing to raise a claim without merit. ***Commonwealth v. Franklin***, 990 A.2d 795 (Pa.Super. 2010).

Layered claims of ineffectiveness "are not wholly distinct from the underlying claims[,]" because "proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.]" ***Commonwealth v. Collins***, 585 Pa. 45, 78, 888 A.2d 564, 584 (2005). "In determining a layered

claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa.Super. 2010).

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa.Super. 2007) (internal citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* Pennsylvania law does not require the defendant to "be pleased with the outcome of his decision to enter a plea of guilty[; a]ll that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made." *Id.* at 528-29. A guilty plea will be deemed valid if the record demonstrates the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. *Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa.Super. 2006). A defendant is presumed to be aware of what he is doing when he enters a guilty plea, and the defendant bears the burden to prove otherwise. *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super. 2003). "A person

who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." **Id.**

With respect to suppression issues, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Luczki**, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting **Commonwealth v. Clemens**, 66 A.3d 373, 378 (Pa.Super. 2013)). "The failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel." **Commonwealth v. Metzger**, 441 A.2d 1225, 1228 (Pa.Super. 1981). "However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move." **Id.** To succeed on such a claim, the petitioner "must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." **Commonwealth v. Watley**, 153 A.3d 1034, 1044 (Pa.Super. 2016) (quoting **Commonwealth v. Melson**, 556 A.2d 836, 839 (Pa.Super. 1989)).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention"

must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000)).

A "stop and frisk" is interchangeably labeled as an "investigative detention," or a "*Terry* stop." *Commonwealth v. Brame*, 239 A.3d 1119 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021). The *Terry* stop reasonable suspicion standard is "less stringent than probable cause." *Commonwealth v. Cook*, 558 Pa. 50, 57, 735 A.2d 673, 676 (1999). "Thus, where probable cause exists, we may find reasonable suspicion necessarily exists." *Commonwealth v. Perry*, 982 A.2d 1009, 1012 (Pa.Super. 2009); *Commonwealth v. El*, 933 A.2d 657, 662 (Pa.Super. 2007), *aff'd*, 602 Pa. 126, 977 A.2d 1158 (2009) (noting that when court has already found existence of probable cause, "[i]t is unnecessary to apply a reasonable suspicion analysis").

"[A] police officer's observance of a defendant's conduct inside a 'high crime area' may, along with other factors, contribute to a finding of probable cause." *Commonwealth v. Joseph*, 34 A.3d 855, 863 (Pa.Super. 2011). *See also Commonwealth v. Thompson*, 604 Pa. 198, 212 n.11, 985 A.2d 928, 936 n.11 (2009) (holding defendant's transaction on street in high crime

area at night, coupled with officer's experience involving similar drug-related transactions, provided probable cause for search and seizure).

Instantly, at the time of Appellant's guilty plea, the court apprised Appellant of the rights and consequences of his plea, and Appellant indicated that he understood. As the PCRA court explained:

> The on-the-record colloquy with [Appellant] met all the necessary requirements for entry of a knowing, voluntary and intelligent guilty plea. Sufficient facts were placed on the record to support the plea, facts [Appellant] acknowledged were substantially correct. Moreover, he testified that he had sufficient opportunity to review all of the evidence with his attorney. This [c]ourt explained the elements of each offense, the maximum sentence for that offense and the fact that it would be in the [c]ourt's discretion to impose those sentences either concurrently or consecutively. [Appellant] acknowledged that he understood both the elements and the potential sentences that could be imposed. He testified that he had the opportunity to discuss potential defenses with his attorney and the rights that he was giving up by entering his guilty plea. His execution of that document was reviewed in open court.

(PCRA Court Opinion, filed November 9, 2020, at 9-10). We agree with the PCRA court's analysis that the record shows Appellant had a full understanding of the nature and consequences of his plea and that he knowingly and intelligently entered the plea of his own accord. *See Rush, supra*.

Further, the evidence at the suppression hearing established the following: Officer Gansky was assigned to the Special Investigation Unit, and he had training in investigating narcotics or controlled substance cases. (N.T. Suppression Hearing, 11/29/16, at 3). On May 5, 2014, Officer Gansky and

Officer Hill were located inside Room 111 of the Neshaminy Inn, when they spoke with two female prostitutes, who he identified as confidential informants ("C.I.s"). (*Id.* at 13). The Neshaminy Inn is known as a "high crime area," and "high drug area." (*Id.* at 11). It is also known for having prostitutes. (*Id.*) During his conversation with the C.I.s, Officer Gansky observed a text message stating that the sender of the text had "white girl, loud and pills, or Percocet…percs 15." (*Id.* at 5). The officer explained that based on his training and experience he was aware that "percs 15" meant Percocet 15-milligram. (*Id.*) He further explained that "Loud is indicative of marijuana. And white girl, for cocaine." (*Id.*)

After receiving the text message, one of the C.I.s called the number corresponding with the text message. (*Id.* at 6). The C.I. used her speakerphone so that the officers could listen to her conversation. (*Id.*) A male answered the phone, and he informed the C.I. that he would call her back on a different phone. (*Id.*) Within a few seconds, another cell phone number called the C.I.'s phone. The voice of the caller, a male, sounded like the male the C.I. had just spoken with on the phone. (*Id.*) The male asked the C.I. where she was located. (*Id.*) The C.I. informed the male that she was at the Neshaminy Inn. (*Id.*) The male informed the C.I. that he would be at that location within 20 minutes, and that he had "percs, loud, and white girl." (*Id.*)

About 30 minutes later, the male called back from the same number he

previously used to call the C.I.'s phone, and he asked the C.I. if she was in the front or back of the hotel. (*Id.* at 7). The C.I. informed the male she was in the back, and for him to call her when he arrived there. (*Id.*) Within a minute of this phone call, the C.I. received another call from the male, and he asked the C.I. what room she was in. (*Id.* at 8). The C.I. advised the male she was in Room 111. (*Id.*) Shortly after receiving this phone call, someone knocked on the door to Room 111. (*Id.*) The officers opened the door and met Appellant. (*Id.*) Immediately after opening the door, the officers detained Appellant. (*Id.*) Officer Gansky did not recall whether he and Officer Hill had their guns or tasers drawn but stated that was his office practice. (*Id.* at 23). After detaining him, the officers searched inside of Appellant's pants pockets, and they located Percocet pills, marijuana, cocaine, cash and two cell phones. (*Id.* at 9).

Officer Gansky explained that he believed Appellant was the person who sent the text message and the person who made the two phone calls arranging the drug sale. (*Id.*) Officer Gansky testified that the reason for this conclusion was that the male caller indicated that he was at the Inn, and shortly thereafter, Appellant knocked on their door. (*Id.*) Officer Gansky explained that he and Officer Hill believed Appellant was "there to sell drugs," and they detained him for "officers' safety." (*Id.*)

At the suppression hearing, plea counsel alleged that "the police did not have probable cause to arrest [Appellant] and search him. Therefore, any

- 13 -

evidence that was discovered during the search would be inadmissible." (**Id.** at 2). The suppression court denied Appellant's motion to suppress, stating:

> [The court] believe[s] probable cause existed to detain and arrest [Appellant]. As was discussed earlier, we apply common sense in these cases. In examining this case, under the totality of circumstances, [the court] think[s] it's clear, given the timeline of the phone call and the arrival of [Appellant], it is clear that he was the person on the other end of the telephone, and he arrived for the purpose of delivering controlled substances to the occupants [of] Room 111.

(N.T. Suppression Hearing at 42). Thus, the trial court found that the police had probable cause to arrest Appellant and to search his pockets as a lawful search incident to arrest.

Although Appellant classifies his detainment as an unlawful "**Terry** stop," he ignores the import of the court's finding of probable cause to support his arrest. Even if we construed the initial encounter as a **Terry** stop (which would only need to be supported by reasonable suspicion), the court's finding that probable cause existed necessarily means that reasonable suspicion, a lesser level of suspicion, also existed. **See Perry, supra**; **El, supra**. Notably, Appellant does not challenge the court's finding of probable cause.[5] Thus, had

---

[5] In any event, our review of the record confirms the trial court's finding of probable cause. Officer Gansky's observation of the text message about illegal drugs sent to an individual in a "high drug area" and "high crime area," coupled with the officer's training and experience, contributes to a finding of probable cause. **See Thompson, supra**; **Joseph, supra**. The suppression court credited Officer Gansky's testimony (**see** N.T. Suppression Hearing at 42), and we are bound by that determination. **See Luczki**, **supra**; **Clemens, supra**.

- 14 -

plea counsel filed a suppression motion based on Appellant's theory of an unlawful **Terry** stop, that claim would have failed. **Id.** Plea counsel was not ineffective for failing to raise a meritless claim. **See Franklin, supra**. Appellant's derivative claim of PCRA counsel's ineffectiveness necessarily fails as well. **See Colins, supra**; **Burkett, supra**. Accordingly, Appellant's first and third issues on appeal merit no relief.

In his second issue, Appellant alleges that plea counsel was ineffective for failing to file a motion to suppress Appellant's statements to police. Appellant avers that the police promised not to file criminal charges against him in exchange for his confession. In support of his position, Appellant claims that after making his statements the police released him from custody without charging him. Appellant also contends that the police would not allow him to leave the police station until he confessed to his involvement in this drug delivery. Appellant concludes that his confession was "a product of coercion and a direct result of the police promise not to file charges against him." (Appellant's Brief at 39).

Further, Appellant argues that the police interrogated him without taking him to a magistrate for a preliminary arraignment until approximately seven months later. As a result of this delay, Appellant alleges his confession was obtained in violation of the "six-hour rule" established in **Commonwealth v. Davenport**, 471 Pa. 278, 370 A.2d 301 (1987). Appellant asserts that this claim has arguable merit, and counsel's failure to file a suppression motion on

this ground lacked a reasonable basis which prejudiced him. Appellant reasons that counsel's failure to challenge his confession resulted in his unknowing and involuntary guilty plea. Appellant concludes that this Court should remand for an evidentiary hearing and appoint him new counsel. We disagree.

The Pennsylvania Rules of Criminal Procedure require that an individual who has been arrested "shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay." Pa.R.Crim.P. 516(A).

> While this requirement is not constitutionally mandated, it ensures that a defendant is afforded the constitutional rights embodied in Pennsylvania Rule of Criminal Procedure 540, which requires the issuing authority to: (1) read the complaint to a defendant to inform him of the nature of the charges against him, Pa. Const. art. I, § 9; (2) inform him of his right to counsel, U.S. Const. Amends. VI, XIV, Pa. Const. art. I, § 9; and (3) inform him of his right to reasonable bail, Pa. Const. art. I, § 14.

*Commonwealth v. Sepulveda*, 579 Pa. 217, 231, 855 A.2d 783, 792 (2004).

In *Commonwealth v. Perez*, 577 Pa. 360, 845 A.2d 779 (2004), the Pennsylvania Supreme Court reconsidered the *Davenport* rule where a majority of the Court concluded that the "application of a stringent bright-line rule to the vastly different sets of circumstances that may be involved in arrest, investigation, and arraignment has yielded perplexing results...." *Id.* at 368, 845 A.2d at 784. Thus, the majority abandoned the six-hour rule and held that "voluntary statements by an accused, given more than six hours

after arrest when the accused has not been arraigned, are no longer inadmissible *per se*." ***Id.*** Instead, the majority in ***Perez*** concluded that courts should look to the totality of the circumstances to determine whether a pre-arraignment statement was freely and voluntarily made, and therefore admissible. ***Id.*** The majority explained that, in making this determination, courts should consider factors such as the attitude exhibited by the police during the interrogation, whether the defendant was advised of his constitutional rights, whether he was injured, ill, drugged or intoxicated when he confessed, and whether he was deprived of food, sleep, or medical attention during the detention. ***Id.*** "We will not find counsel ineffective for failing to pursue appellant's claim of an involuntary confession where there was little likelihood of success…" ***Commonwealth v. Miller***, 495 Pa. 177, 181, 433 A.2d 1, 3 (1981).

Instantly, after his contact with Officer Gansky on May 5, 2014, the police detained Appellant and he went to the police station for an interview. (***See*** N.T. Suppression Hearing at 10). Before his interview began, the police advised Appellant of his ***Miranda***[6] rights. (***See*** N.T. PCRA Hearing, 5/3/18, at 55); ***see also*** (Exhibit "A" attached to Appellant's Memorandum in Law in Support of PCRA filed 2/25/19). After his interview, the police released Appellant from custody. The Commonwealth filed charges on September 8,

---

[6] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2014, and Appellant's preliminary arraignment occurred on December 14, 2014.

Appellant's reliance on **Davenport** is misplaced because **Perez** overruled **Davenport**. Applying **Perez** to the instant case, the totality of the circumstances demonstrates that Appellant voluntarily gave his statement to Officer Gansky. Before his interview, the police advised Appellant of his constitutional rights under **Miranda**. Additionally, Appellant was not injured, ill, drugged or intoxicated when he confessed. **See Perez, supra**. Further, Appellant was not deprived of food, sleep, or medical attention during the detention. **Id.**

The PCRA court addressed Appellant's issue as follows:

> First, [Appellant]'s claim contradicts [plea] counsel's representations, made in the presence of [Appellant]. At sentencing, [plea] counsel asked this [c]ourt to consider [Appellant]'s cooperation with police, stating "[Appellant] cooperated with the officer. He went back to the police station. He gave a statement to the officer. And the officer let him go that day." [Appellant] did not dispute [plea] counsel's assertion that his statements to police were voluntarily given.

> Second, the timing of [Appellant]'s claim of police coercion renders the claim suspect. The facts supporting the claim were known to [Appellant] and the legal import of those facts, the involuntary nature of his confession, would have been apparent. Yet [Appellant]'s current allegation regarding police coercion were not included in his [f]irst [p]ro [s]e PCRA petition. In that petition, he raised only one claim—that [plea] counsel was ineffective for failing to appeal the sentence. The allegations were not included in his [a]mended PCRA petition filed by counsel. It was not until [the] [r]esponse to this [c]ourt's [n]otice of [i]ntent to [d]ismiss that [Appellant] first alleged that he was not, in

- 18 -

fact, cooperative with police as was previously represented through [plea] counsel, but rather had been coerced.

Third, [Appellant]'s factual allegations regarding coercion have changed. When police coercion was first raised …, [Appellant] alleged that he was told he would be released if he gave "an incriminating statement." There was no mention of a promise not to prosecute having been made. … In his second PCRA petition, [Appellant] for the first time asserted that he had refused to answer questions about his knowledge of the fact that he would not be able to challenge the statement on appeal. Given these circumstances, this [c]ourt cannot conclude that the statement was a significant factor in his decision to plead guilty.

(PCRA Court Opinion at 15-17). The record supports the PCRA court's analysis. Under these circumstances, counsel was not ineffective for failing to file a motion to suppress. **See Miller, supra**. Based upon the foregoing, we agree with the PCRA court that counsel was not ineffective in connection with Appellant's guilty plea. **See Moser, supra**. **See also Conway, supra**. Accordingly, we affirm.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/22/2021*